Farmers Trust & Savings Bank of Laurens, Appellee, v.
Anna R. Miller et al., Appellants.

CHATTEL MORTGAGES: Requisites and Validity—Chattel Clause in
1 Real Estate Mortgage. A real estate mortgage which, in addition
to the land, conveys the crops raised on the land "from *now* until
the debt secured is paid," is also a chattel mortgage, to the extent of
the crops. (See Book of Anno., Vol. 1, Sec. 12376, Anno. 85 *et seq.*;
Sec. 12713, Anno. 42 *et seq.*)

RECEIVERS: Appointment—Grounds—Unmatured Crops Under Fore-
2 closure. A receiver is properly appointed, in foreclosure proceedings,
to care for unmatured crops which are in litigation.

APPEAL AND ERROR: Harmless Error—Premature Appointment of
3 Receiver. Harmless error results from appointing, *prior to sale* un-
der foreclosure proceedings, a receiver for the entire mortgaged prop-
erty, *including the homestead*, when the record reveals a sale of the
entire mortgaged premises for less than the mortgage debt.

Headnote 1: 11 C. J. p. 453 (Anno.)   Headnote 2: 11 C. J. p. 727.
Headnote 3: 4 C. J. p. 916.

Headnote 2: 26 A. L. R. 33; 36 A. L. R. 609; 19 R. C. L. 561.

*Appeal from Clay District Court.*—James DeLand, Judge.

July 1, 1927.

An action to foreclose a real estate mortgage which is also
claimed to be a chattel mortgage on crops grown on mortgaged
land; also, that the mortgage be foreclosed, both upon the land
and the crops, and demanding the appointment of a receiver, to
take possession of the land and crops in the field. From a find-
ing in favor of the plaintiff defendants appeal.—*Affirmed.*

*Healy, Thomas & Healy,* for appellants.

*Gilchrist & Gilchrist,* for appellee.

Albert, J.—On April 19, 1923, Anna R. Miller was the
owner of about 280 acres of land in Section 23 in Clay County,
Iowa. On that day, she and her husband executed to the plain-

tiff a mortgage, the material part of which, so far as this litigation is concerned, is as follows:

"Anna R. Miller and her husband, in consideration of eight thousand and no-100 dollars paid by Farmers Trust and Savings Bank of Laurens, Pocahontas County, Iowa, do sell and convey unto the said mortgagee the following real estate in the county of Clay, Iowa, to wit: [Here follows the technical description of the land] and also all of the rents, issues, use and profits of said land and the crops raised thereon from now until the debt secured thereby shall be paid in full. * * * It is also agreed that in case of default in any respect the mortgagee, * * * either before, or on the commencement of an action to foreclose this mortgage, or at any time thereafter, shall be entitled to the appointment of a receiver who shall have the power to take and hold possession of the said premises and to rent the same, collect the rents and profits therefrom, for the benefit of said mortgagee, and such right shall in no event be barred, forfeited or retarded by reason of a judgment, decree or sale in such foreclosure, and the right to have such receiver appointed upon application of the mortgagee shall exist regardless of the fact of solvency or insolvency of the debtor or mortgagor, and regardless of the value of said mortgaged premises or the waste, loss and destruction of the rents and profits of said mortgaged premises, during the statutory period of redemption."

1. CHATTEL MORT-
GAGES: requisites and validity: chattel clause in real estate mortgage.

This instrument was duly recorded on the 21st of April, 1923, in the Chattel Mortgage Index, Book 1, page 170, of the records in the recorder's office of Clay County, Iowa.

On the 16th day of September, 1925, plaintiff filed a petition in the district court of Clay County, asking foreclosure of this mortgage as a chattel mortgage and as a real estate mortgage, and asked the appointment of a receiver. Clifford Miller, son of this codefendant, claims that, on the 14th of September, 1925, he purchased from Anna R. and R. F. Miller about 135 acres of corn standing in the field at that time, and gave a valuable consideration therefor; and claims to be the owner of this crop.

The plaintiff claims that the above instrument referred to constituted a chattel mortgage on said crop, and asks the fore-

closure of the same. So far as this case is concerned, this is the controlling question.

. .The best test for ascertaining whether or not this instrument constitutes a chattel mortgage is to strike therefrom all of that part which constitutes a real estate mortgage, and then determine whether or not what is left will constitute a valid chattel mortgage. The granting clause of this instrument thus treated will read as follows:

"Anna R. Miller and husband do hereby sell and convey all of the rents, issues, use and profits and the crops raised thereon [the land described therein] from now until the debt thereby secured shall be paid in full."

.Appellants rely on the proposition that, if the defeasance clause is read in connection with this instrument as a whole, a chattel mortgage is not created thereby; and cite, as supporting their contention, *Swan v. Mitchell,* 82 Iowa 307; *Farmers & Merch. St. Sav. Bank v. Kriegel,* 196 Iowa 833; *Hakes v. North,* 199 Iowa 995; *Motor Finance Co. v. Wenzlaff,* 197 Iowa 314; *Cooper v. Marsh,* 201 Iowa 1262; *Young v. Stewart,* 201 Iowa 301; *Robertson v. Roe,* 203 Iowa 654. Some of the cases just cited are not cited by appellants, but are similar to the cases which they have cited. An investigation of each of the cited cases and other cases in this state holding similarly shows that in none of them was the instrument similar to the one under consideration here. The distinctive feature of this case is that the granting clause of this instrument specifically covers crops raised on the land "from now until the debt secured thereby shall be paid in full." In none of the cases cited have we been able to find an instrument where the granting clause covers the crops; hence the cases cited and relied upon have no application to the case at bar.

. That a chattel mortgage which covers property not in existence at the time it is made is not void, see *Scharfenburg v. Bishop,* 35 Iowa 60; *Brown v. Allen,* 35 Iowa 306; *Wheeler v. Becker,* 68 Iowa 723; *Norris v. Hix,* 74 Iowa 524. Such instrument is held to cover the crops when they come into existence; and that a chattel mortgage covering all crops grown during a certain time is valid and sufficient, is held in *Norris v. Hix,* supra.

It is our conclusion, therefore, that this instrument did con-

stitute a chattel mortgage lien on all crops grown on the land in question from the time of its date,—or rather, its recording,—until the debt secured by it was fully paid: Being a valid chattel mortgage, and having been properly indexed, as required by law, it was notice to the world of plaintiff's rights thereunder, and Clifford Miller had constructive notice, by reason of the recording of said chattel mortgage, at the time he claims to have bought this standing crop of corn. Aside from this, the evidence quite conclusively shows that, before the bill of sale for said crop was fully executed to him, he was served with a notice, signed by the plaintiff, advising him that the plaintiff held and owned a mortgage upon the crops grown on the land in question, including the corn crop then standing thereon, and he was advised not to interfere with said land nor with said crops, nor to take any of the same, or any bill of sale or lien upon either said land or crops; and the land was properly described in said notice.

It is apparent, therefore, that Clifford Miller, when he bought this standing crop of corn in the field, took it, not only with constructive, but actual, notice of the rights of the plaintiff under its chattel mortgage. The distinction between the case at bar and the *Farmers & Merch. St. Sav. Bank* and *Hakes* cases, above cited, is that in those cases, as in the others of similar import cited, it was, in effect, held that the instrument did not rise to the dignity of a chattel mortgage, and that one who purchased the crops before the action was commenced would hold the same as against the written instrument. The holding in this case is that the original instrument was in fact a chattel mortgage, duly recorded; and hence the general rule that a purchaser of property covered by a duly recorded chattel mortgage takes it subject to the lien of such mortgage applies in the instant case.

The question next most seriously urged by appellants is that the court erred in appointing a receiver for this property. Much evidence was introduced in the trial of the case as to the value of the real estate, and, as usual under such circumstances, there was a wide variance in the testimony of the different witnesses; those of the plaintiff testifying that the land was worth from $100 to $135 per acre, and witnesses for the defendants

2. RECEIVERS: appointment: grounds: unmatured crops under foreclosure.

fixing the value in the neighborhood of $180 an acre; but the question of the value of the real estate is not so important when we come to consider the real question of contention between these parties,—that is, their respective rights in the 135 acres of standing corn in the field.

It is apparent that this corn had not reached its maturity, and that the same would have to be cared for and harvested in due season. So long as the right to the possession of this standing corn was in litigation between the parties, and the crop was soon to be matured and harvested, we think the court was right in appointing a receiver to take possession of said crop and harvest the same. It is apparent that R. F. Miller and Anna R. Miller had no further interest in the crop which had to be cared for, and under these circumstances, we feel that the court was warranted in appointing a receiver to take possession of and care for and harvest the same.

One other question is discussed, and that is that as to R. F. Miller and wife a receiver should not have been appointed for the homestead; and we are cited to the rule announced in *Sheakley v. Mechler*, 199 Iowa 1390, where we held, in

3. APPEAL AND ERROR: harmless error: premature appointment of receiver.

substance, that a receiver could not take possession of a homestead until after a sale on foreclosure, and then only when the property did not bring enough to satisfy the judgment. The record in the instant case, however, shows that there was a sale under the foreclosure, and that the property did not sell for enough to satisfy the judgment, interest, and costs; and while, technically, it may be that a receiver should not have been appointed before this sale occurred, yet, as the execution sale showed a deficiency, he would be entitled to take possession of the homestead. Further than this, the court protected these aged people in the possession of their homestead for the period of redemption by giving them a right to use and occupy the buildings and appurtenances thereto. This was probably more than the defendants were entitled to, under a strict construction of the law; but, as no appeal is taken therefrom, we give it no further attention, as no harm came to defendants by such appointment.

Taking the case as a whole, we find no reversible error in the record.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and KINDIG, JJ., concur.