CAPITAL CITY STATE BANK, Appellant, v. ALBERT RISER et al., Appellees.

No. 41684.

Ｆｅｂｒｕａｒｙ 14, 1933.

C. B. Hextell, for appellant.

William T. Guiher, Carl F. Knox, and Percival & Wilkinson, for appellees.

ANDERSON, J.—The land covered by the mortgage in suit was originally owned by a stranger to the present case, subject to a mortgage of $15,000.00. The Citizens State Bank of Earlham obtained a judgment against the original title holder, and one of the officers of said bank purchased, under execution issued on said judgment, all of the land except the homestead of the original owner. The officers of said bank induced the Capital City State Bank of Des Moines, the plaintiff herein, to purchase the $15,000.00 mortgage, and to foreclose the same, guaranteeing that if there was no redemption from such foreclosure sale they would personally take the land from the Capital City State Bank after the period of redemption had expired under such foreclosure; and two of the directors of the State Bank of Earlham executed their note to the Capital City State Bank for the sum of $16,974.71, which represented the amount then due upon the $15,000.00 mortgage, including the expenses of foreclosure, and the said Capital City State Bank assigned its sheriff's certificate to one of the officers of said Citizens State Bank, viz: Albert Riser, and he took title to the farm in controversy through sheriff's deed, and, then, to secure the payment of the note above mentioned, executed to the Capital City State Bank a mortgage on the land, and shortly thereafter the said Albert Riser conveyed the land to the Citizens State Bank of Earlham.

It appears from the evidence without controversy that all of

these transactions were for and on behalf of the said Citizens State Bank, and that said Citizens State Bank at all times after the issuance of the sheriff's deed was the owner of the land, and that Albert Riser and Hoskins, who joined with him in the execution of the note for $16,974.71 to the Capital City State Bank, were merely accommodation makers, and that the accommodated party was the Citizens State Bank of Earlham.

On September 6, 1930, L. A. Andrew was appointed by the district court receiver of the Citizens State Bank; that the Citizens State Bank had been renting the farm, collecting the rents, and treating it as its own; that after the appointment of L. A. Andrew as receiver, and on the 2nd day of February, 1931, he leased the property involved by a written lease for the period from March 1, 1931, to March 1, 1932, for cash rent in the sum of $1,100.00, taking two notes therefor, one for $300.00, due October 15, 1931, and one for $800.00, due January 1, 1932, which notes or the proceeds thereof are still in the possession of the said L. A. Andrew, receiver.

On July 6, 1931, plaintiff commenced its action to foreclose its mortgage securing the $16,974.71 note, alleging, in its petition, that in addition to having a real estate mortgage on the premises described, it also had a complete chattel mortgage, which was a part of the real estate mortgage, and which provided as follows: "And, also, the rents, issues, use and profits of said land and the crops raised thereon from now until the debt secured thereby shall be paid in full. To Have And To Hold the premises above described, with all the appurtenances thereunto belonging, and also said rents, issues and profits of said land, and the crops raised thereon, unto the said party of the second part and to its heirs and assigns forever, the said party of the first part hereby covenanting that the above described premises and also the rents, issues, use and profits of said land, and the crops thereon, are free from any encumbrances," and that the mortgagors will warrant and defend the title against all persons whomsoever. That said chattel mortgage was properly recorded and indexed as such, and that thereunder the rents and profits of the mortgaged land are pledged as security for the debt as fully and completely as the real estate is pledged; and plaintiff asks that its said chattel mortgage be foreclosed and established as a lien against the rents and profits arising from said land during the year 1931, and also during the period of redemption. And plaintiff further asks that L. A. Andrew, receiver, who is

in possession of said premises, be ordered and directed to keep the rents and profits therefrom separate and distinct from the assets of the Citizens State Bank and not to commingle them with the assets of said bank.

L. A. Andrew, as receiver, in his answer to the petition of plaintiff states that he is entitled to the rents and profits of said real estate during the year of redemption; that he represents the creditors of the said bank, and holds the rent notes for the year 1931, and that the same should be considered assets of said bank; that the plaintiff's chattel mortgage is not a lien upon such rent notes, nor upon the crops raised upon the real estate during the year 1931.

There was a trial to the court, and on the 16th day of December, 1931, a decree was entered in favor of plaintiff for the amount due under its mortgage for $18,327.96, and establishing the lien of the mortgage and foreclosing the same.

The decree also found and adjudged that L. A. Andrew, as receiver, was entitled to hold the rents for the described premises from March 1, 1931, to February 28, 1932, amounting to $1,100.00, and that plaintiff was not entitled to have its chattel mortgage made a lien upon said rents or rent notes. And from such decree, finding and order, the plaintiff, Capital City State Bank, prosecutes this appeal.

It will be observed from the foregoing that the only controversy here is as to who is entitled to the 1931 rent represented by the notes aggregating $1,100.00, or the proceeds thereof, held by the said L. A. Andrew, receiver, and which were awarded to him by the decree of the trial court.

I. It is the contention of the plaintiff-appellant: (1) That L. A. Andrew, receiver of the Citizens State Bank, took the land subject to the same plight that it was in at the time the said bank received it,—that is, that the bank held it subject to the real estate and chattel mortgage; that he took the assets of the Citizens State Bank subject to all prior vested liens, and that he had no more or greater rights in the land, or the rents, or crops thereon, than had the said Citizens State Bank; and (2) that under the combined mortgage (real and chattel) of the plaintiff, the plaintiff had a lien not only on the real estate, but also on the rents, issues and profits therefrom.

The first contention of the appellant seems to be universally

recognized by text writers and courts as the general rule, with possibly one exception, which we will hereinafter mention.

The following citations support such proposition:

Vol. 53 Cor. Jur. 102 lays down the following general rule:

"The general rule is that the appointment of a receiver does not divest valid pre-existing liens, but that the receiver takes the property in the same plight and condition and subject to the same equities and liens as existed against it in the hands of the person or corporation out of whose possession it was taken, although this rule cannot be invoked to the prejudice of the insolvent's creditors. And it is held that any previous equitable assignment of property will be enforced in a court of equity against the receiver."

In the case of Home Savings & Trust Co. v. Polk District Court, 121 Iowa 1, this court used the following language:

"The appointment of a receiver determines no right. Such an order is granted for the purpose of preserving the property, to the end that it may ultimately be distributed among the parties found entitled thereto. The order of appointment creates no lien in favor of the parties applying for it, nor does it give them any advantage or preference over other claimants to the property. * * * The receiver represents all parties in interest, and it is his duty to administer upon the estate for the benefit of all parties concerned. * * * 48 Ia. 518."

In Silver v. Wickfield Farms, 209 Iowa 856, this court said:

"A receiver of a corporation cannot impeach any act which the corporation itself could not successfully assail. * * * In brief, a receiver of a corporation can acquire no greater rights in the property than the corporation had at the time his rights became fixed. He takes the property subject to all equities or incumbrances existing against the same in the hands of the insolvent, and he is not viewed as a bona-fide purchaser for value."

The one possible exception to, or modification of, the general rule thus announced is the case of Schlesselman v. Martin, 207 Iowa 907, in which we find the following language:

"The receiver is something more than the representative of the debtor. He is the representative also of the creditors. Indeed he is

primarily such. He may assert as against the debtor and those claiming under him any right which the creditors themselves could have asserted. We think his position is necessarily analogous to that of a creditor who had taken the rent notes either as payment or security of a debt. In such a case, the subsequent right accruing to the mortgagee to assert a lien under his receivership clause will not relate back so as to defeat the creditor, who already has a lien upon the subject-matter. * * * The necessary effect of the receivership was to convey to the receiver all the property of the bank of whatever kind, subject only to plaintiff's lien. Whatever rights the receiver acquired by such transfer, on April 14, 1927, may not be defeated by the assertion of a later lien under the receivership clause. The plaintiff had no lien on the rents and profits at the time of such transfer."

But the cited case furnishes little support, if any, for the appellees' position in the present case. In the cited case there was a dispute as to whether the rent notes were in existence at the time of the receivership, or whether they were notes taken by the receiver after he was appointed and qualified. In that case the question involved was whether a subsequent right accruing to the mortgagee to assert a lien under his receivership clause would relate back so as to defeat the creditor, or his representative, the receiver, who already had a lien upon the subject matter. In the Schlesselman case we said:

"The necessary effect of the receivership was to convey to the receiver all the property of the bank, of whatever kind, subject only to plaintiff's lien. Whatever rights the receiver acquired * * * may not be defeated by the assertion of a later lien under the receivership clause. The plaintiff had no lien on the rents and profits at the time of such transfer."

In the Schlesselman case the plaintiff applied for a receiver under the terms of his mortgage, for the purpose of satisfying a deficiency judgment. The appointment was made upon that very ground and none other. In the case at bar no application for, or appointment of, a receiver, under the terms of plaintiff's mortgage, is involved. Plaintiff's action is for the foreclosure, not only of its real estate mortgage, but also of its claimed chattel mortgage. There was no chattel mortgage involved in the Schlesselman case. The

point there decided was that the bank receiver had a prior right to current rents over the remedial rights of the mortgage receiver. Here it is not a lien that comes into active being or existence only upon the commencement of a mortgage foreclosure, with which we have to deal, but a lien created by the contract itself. It is purely the assertion of a contract right and not merely a remedial right.

It must be borne in mind that in the present case, the Citizens State Bank of Earlham was in fact always the owner of the real estate involved, and the mortgagor, or at least stood in the place of the mortgagor, with no more rights and under the same obligations as was the person who executed the mortgage. The rent notes and lease involved in this action were taken by the receiver after his appointment.

We said in Silver v. Wickfield Farms, 209 Iowa 856, that:

"* * * a receiver of a corporation can acquire no greater rights in the property than the corporation had, at the time his rights became fixed. He takes the property subject to all equities or incumbrances existing against the same in the hands of the insolvent. * * *"

We also said in the most recent case of Andrew v. Home Savings Bank, 215 Iowa 401, speaking through Kindig, Judge, that:

"Of course, if the rent under the lease made by the Superintendent of Banking for the period in question were still uncollected, the real estate mortgagee, under proper circumstances, might have a superior claim thereto over that of such lessor. As a matter of fact, however, there were no rents, issues, or profits due or to accrue in the future during the year in question on the demised real estate after the commencement of the action to foreclose the real estate mortgage and obtain the appointment of a receiver. To put the thought differently, when the real estate mortgagee changed her prospective right to the rents, issues, and profits into a present right to collect and appropriate any such rents, issues, and profits there might be during the year in question, there were in fact no rents, issues, or profits due or to accrue for that period. Such rents, issues, and profits for the period in question already had been collected and appropriated by the Superintendent of Banking, as before explained, and therefore did not exist as rents, issues, and profits to be collected and appropriated by the real estate mortgagee."

In the present case the rents, aggregating $1,100.00 and evidenced by two promissory notes, had not been collected at the time of the commencement of plaintiff's present action, and the notes, or the proceeds therefrom, are still in the possession of the bank receiver.

It follows from what we have said that L. A. Andrew, as receiver in the present case, has no more rights to the crops or the rents represented by the notes in controversy here than did the Citizens State Bank of Earlham. He took the notes in controversy, and all other assets of said bank, subject to all prior vested liens, and it remains to be determined whether the plaintiff in this action had a vested lien under its claimed chattel mortgage at the time the notes in question were taken by L. A. Andrew, as receiver of the Earlham bank.

II. Appellant's second contention is that it had a complete real estate and a complete chattel mortgage, both properly recorded and indexed; that such fact gave notice to the world that the plaintiff had a lien, not only on the real estate, but also on the rents, issues and profits therefrom, and that such instrument was good as against L. A. Andrew, as receiver of the Citizens State Bank of Earlham. The appellee contests this proposition, and denies that the recitation in plaintiff's mortgage was a valid chattel mortgage, and cites McMaster v. Emerson, 109 Iowa 284; Farmers & Merch. State Sav. Bank v. Kriegel, 196 Iowa 833; Johnson v. Siedel, 178 Iowa 244; and the Schlesselman case, in support of such denial.

The McMaster v. Emerson case was an action to foreclose a chattel mortgage upon crops grown during certain years, including 1897. A prior mortgage upon the land was foreclosed in May, 1897. The title holders had leased the land for 1897 and assigned the lease to a bona-fide creditor. The chattel mortgagors had nothing to do with the raising of the crops for the year 1897, and had no interest therein whatever, and this court held that the chattel mortgage in question did not attach to the 1897 crop for that reason.

In the case of Farmers & Merch. State Sav. Bank v. Kriegel, the controversy was between an intervener, as an alleged holder of a chattel mortgage on certain personal property, including "all uses and profits" of certain real estate, and an attaching creditor, who attached certain personal property; and this court held that such a mortgage "does not embrace ripened grains severed from the soil, or animals nurtured from such grains." Holding further that

"if it is to be construed as a chattel mortgage upon this property, then it became such as of its date, * * * and constructive notice thereof was imparted as of the date of its registration." The mortgage involved in that action was a regular real estate mortgage describing certain land and contained the following clause: "Together with all tenements, hereditaments, appurtenances, rents, *uses and profits* thereof." The mortgage further provided that in the event of default the holder thereof would "be entitled to the appointment of a receiver who shall have the power to enter upon, take, hold possession, cultivate and operate said premises, and to rent the same and collect the *rents, issues and profits therefrom,* until the judgment is fully paid or the time for redemption has expired * * *." The mortgagee's claim under that mortgage was to oats, corn, cattle, horses, hogs, hay, etc. The grain and hay were claimed on the theory that they were produced out of the soil of the mortgaged farm though now severed therefrom. The cattle, horses and hogs were claimed on the theory that they were either produced upon the farm or were nurtured therefrom by the products of the farm. In construing the language of the claimed chattel mortgage this court held that no rents were involved, and that the question to be determined was what construction was to be put upon the words "*uses* and *profits,*" and held that the quoted language was not such "as would apprise a mortgagor that he was executing a chattel mortgage, as well as a real estate mortgage," and that to so construe the language "would be to introduce into it an element of stealth and to impose upon the mortgagor a contractual obligation of which he was himself unconscious." And this court held that the language used was not sufficient to create a lien as under a chattel mortgage.

The mortgage in question in the case at bar contains, after the description of the land, the following:

"And, also, the rents, issues, use and profits of said land, and the crops raised thereon, from now until the debt secured thereby shall be paid in full."

"To Have And To Hold the premises above described with all the appurtenances thereunto belonging, and also said rents, issues, use and profits of said land, and the crops raised thereon unto the said party of the second part, and to its heirs and assigns forever, and the said party of the first part hereby covenanting that the above described premises and also the rents, issues, use and profits

of said land, and the crops thereon, are free from any incumbrances, and mortgagors" will warrant, etc.

This language is identical with the description in a like mortgage construed in the case of Farmers Trust and Savings Bank v. Miller, 203 Iowa 1380, except that the last paragraph above quoted, appearing in the mortgage here under consideration, did not appear in the mortgage in the cited case. And this court held that the language in the cited case was unlike that in the Farmers & Merchants State Sav. Bank v. Kriegel case and that the distinctive feature of the language in the Farmers Bank v. Miller case was that the granting clause specifically covered crops raised on the land "from now until the debt secured thereby shall be paid in full." And this court finally held, speaking through Judge Albert, as follows:

"It is our conclusion, therefore, that this instrument did constitute a chattel mortgage lien on all crops grown on the land in question from the time of its date,—or rather, its recording,—until the debt secured by it was fully paid. Being a valid chattel mortgage, and having been properly indexed, as required by law, it was notice to the world of plaintiff's rights thereunder."

And the court further held that the "general rule that a purchaser of property covered by duly recorded chattel mortgage takes it subject to the lien of such mortgage applies in the instant case."

We are satisfied to follow the precedent and rule thus laid down and established, and hold that the language in the mortgage under consideration constituted a valid chattel mortgage and created a valid, vested, and existing lien upon the rents, issues, use and profits of the land described and the crops raised thereon from the date of its execution and recording. See also Soehren v. Hein, 214 Iowa 1060.

We hold also that the Citizens State Bank of Earlham was at all times the owner of this land; that the title was held for a time by Riser for the bank; that in executing the mortgage in question Riser acted for the bank; that L. A. Andrew, as receiver for the bank, was not an innocent purchaser, but that he held the land in the same plight as it was in the hands of the Citizens State Bank, and subject to the rights of plaintiff under its said chattel mortgage, and that the plaintiff is entitled to the notes now held by the receiver, or to the proceeds thereof, representing the rents from the

land covered by plaintiff's mortgage. It follows that so much of the decree of the court below as appealed from, which holds that L. A. Andrew, receiver, is entitled to the promissory notes aggregating $1,100.00, was erroneous, and must be reversed.—Reversed.

KINDIG, C. J., and STEVENS, ALBERT, MITCHELL, KINTZINGER, and DONEGAN, JJ., concur.