EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellant, v. JEROME F. McNAMARA et al., Appellees.

No. 42906.

298

MARCH 5, 1935.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING, AND
REHEARING DENIED, SEPTEMBER 24, 1935.

Carl M. Adams and Thomas & Loth, for appellant.

Breen & Breen, for appellees.

PARSONS, J.—The appellant herein was plaintiff in the case and June 12, 1934, commenced foreclosure of a mortgage in the district court of Webster county, Iowa, given by the defendant Jerome McNamara. The mortgage was executed May 1, 1928, and was in the sum of $22,000 due June 1, 1933, with interest at 5 per cent, payable semiannually, and 8 per cent after maturity. The mortgage was given on a 355-acre farm in Webster county, Iowa, and the mortgage was the ordinary farm mortgage with the provision therein for appointment of a receiver of the land in the event of commencement of foreclosure. In addition to this, it was a combined mortgage upon land and a chattel mortgage upon the rents, issues, profits, and income therefrom, and the crops raised thereon from the date of the mortgage until the debt secured thereby should be fully paid. The mortgage was recorded and indexed not only as a real estate mortgage, but also as a chattel mortgage filed May 28, 1928, in the proper

records of the county. The petition sets forth there was due on the note as of June 1, 1934, $25,343.92, and that the rights of all of the defendants, McNamara, and Harry Willy and Melvin Nelson, his tenants, of Webster county, Iowa, were junior and inferior to the rights of the plaintiff. The petition especially plead that the mortgage conveys and pledges all the rents, profits, and income therefrom, and provides for the appointment of a receiver. It sets forth that the maker of the mortgage, McNamara, is insolvent, and asks judgment for $25,343.92 with interest at 8 per cent from June 1, 1934, and prays that the judgment be decreed against the mortgaged premises as a first lien and also be decreed as a first lien upon the rents, issues, profits, and crops, and prays for the foreclosure of the mortgage both as chattel and real estate mortgage, and that special execution issue for the sale of the mortgaged premises, and that a receiver be appointed to take possession of the mortgaged premises, and of the crops to collect the rents, issues, and profits, and to harvest the crops thereon, and make application of the funds so derived.

The case was commenced for the September, 1934, term of court. The original notice was served on the 12th of June, 1933, and on September 26, 1934, judgment and decree were entered in the case on default for $25,900.08 with interest at 8 per cent, and $11 costs, and foreclosed the mortgage, appointing a receiver to collect the rents for 1934, and also to lease the premises for the year commencing March 1, 1934, and from the proceeds of the rentals to pay, first, costs and expenses of receivership; second, taxes; third, any amount remaining to be applied on plaintiff's judgment. On October 13, 1934, the defendant McNamara filed a motion to set aside the default and decree, and in his showing stated he employed E. M. McCall, who had for several years been his attorney, and that he took the original notice to McCall's office and instructed him to appear and secure a continuance under the moratorium statute, or file such other pleadings as McCall thought advisable. He paid no further attention to the matter until about October 10th, when he was advised of the entering of the decree. That shortly after receiving the original notice McCall took sick and was critically ill, and could not attend to business, and the defendant had no notice that McCall had failed to appear. Resistance to the motion was filed, but on the 27th day of October, 1934, the motion was submitted and the court entered an order setting

aside the default and decree, but taxing the costs of such to the defendant, and provided that the motion for continuance under the moratorium statute must be filed by October 31, 1934.

· We have carefully examined the record and find from the showing made that the court did the proper thing in sustaining the motion to set aside the default. The defendant then filed application for continuance to March 1, 1935, under the provision of chapter 182 of the Acts of the 45th General Assembly, and asked that the order provide for the disposition of the rentals in the usual and ordinary manner. To this there was a resistance filed, and evidence was taken upon that question.

The court on December 11, 1934, made an order for the continuance, leaving McNamara in possession of the premises, and provided that the balance of the cash rent approximating $225 due from the tenants of McNamara be paid into the office of the clerk of the court, and any further payment subsequent to this date of corn-hog money and the unpaid balance of the proceeds of hay, payable to McNamara, be turned over to the clerk of the court, and that these payments, together with the sum of $1,428.46, which had been paid by defendant into the office of the clerk, be distributed by the clerk in the following order: (a) In payment of taxes, including payment to plaintiff for all taxes heretofore advanced by it; (b) In payment of insurance; (c) In payment of reasonable costs of maintenance and upkeep; and ordered certain repairs to be made to the barn on the farm, and after that directed the clerk to pay certain bills, and the balance, if any, to be distributed as the court may direct. One Stowe was appointed agent by the court to see that the provisions of the order were observed, and the rents promptly and faithfully paid to the clerk and applied as specified. To all of which the plaintiffs excepted. From this ruling the plaintiff has appealed to this court.

McNamara had collected rents after he had been served with original notice of this suit, in excess of $1,428.46, which the court ordered him to pay into the office of the clerk. McNamara had, following the setting aside of the decree, and prior to the entry of the order, gone to the farm and hauled away his share of the corn and had collected some other money from the rent. The court allowed him to retain a portion of this for his expenses in shelling and hauling the corn to market, and for some material he had bought to make repairs

on the buildings on the farm. These items did not amount to so very much. The question naturally arises: What authority did the court have to do this, i. e., to permit McNamara to hold out any part of the money he had collected on rents, at least after the institution of this suit, and keep away from the plaintiff and from going where he had contracted in the mortgage it should go as security over and above the land for the payment of the note secured by the mortgage?

The defendant McNamara was attempting, in what he did in the court, to secure a continuance of the foreclosure proceedings by virtue of chapter 182 of the Acts of the 45th General Assembly, which professed only to deal with the foreclosure of real estate mortgages or deeds of trust; but in this case it will be observed that there was not only a real estate mortgage involved but a chattel mortgage as well. This statute contains a clause, speaking of the continuance and other orders,

"* * * which order or orders shall provide that such rents, income or profits shall be paid to and distributed by the clerk of the district court * * * in which said suit is pending, and further provide that in such distribution, taxes, insurance, cost of maintenance and upkeep of said real estate shall be paid in the priority named, and any balance distributed as the court may further direct." Section 2.

Conceding the validity of the statute, it deals only with real estate mortgages and has nothing to do with the chattel mortgage. The question naturally arises: Does this statute authorize the court to seize property pledged to the plaintiff by chattel mortgage and treat it the same as where the mortgage is not dual in nature, i. e., both a chattel and a real estate mortgage?

The first mortgage of this character that came before the courts was in Farmers Tr. & Sav. Bank v. Miller, 203 Iowa 1380, 214 N. W. 546. The mortgage involved in that case was one in which in the granting clause thereof, following the description of the real estate, was the following, "and also all of the rents, issues, use, and profits of said land and the crops raised thereon from now until the debt secured thereby shall be paid in full." This was followed, same as in the case at bar, in the body of the mortgage provision for the appointment of a receiver. The instrument in the case cited was recorded and indexed in the

chattel mortgage records in the proper county. The court said of it on page 1384:

"* * * but the question of the value of the real estate is not so important when we come to consider the real question of contention between these parties; that is, their respective rights in the 135 acres of standing corn in the field." And it said further, "we feel the court was warranted in appointing a receiver to take possession of and care for and harvest the same."

Equitable Life Ins. Co. v. Read, 215 Iowa 700, 246 N. W. 779. This was a foreclosure proceeding of two mortgages. Among other things, the court held that a second mortgage belonging to one Oviatt was entitled to the rents, income, and profits of the land for the season commencing March 1, 1932. From this the Equitable Life Insurance Company appealed. It appears in this case that Henry Read was the owner of the 200-acre farm involved in the controversy, and on April 6, 1928, he secured a loan from the Equitable Life Insurance Company and secured the same by a mortgage signed by him and his wife. This mortgage was filed for record April 14, 1928. On the 12th day of April, 1928, Read and his wife had executed to Oviatt a second mortgage on the real estate to secure a note for $6,000, and Oviatt in the following July commenced a foreclosure of this mortgage and asked for the appointment of a receiver. On August 13, 1931, the Equitable Insurance Company commenced the foreclosure of its mortgage, and also asked for the appointment of a receiver. Both mortgages provided for the appointment of a receiver on the breach thereof. The Equitable filed a petition of intervention in the Oviatt foreclosure. The cases were consolidated and a decree was entered in each of the foreclosure cases, reserving the question of the appointment of a receiver. Special execution was issued and a sale was had, each mortgagee being the only bidders. In the Oviatt foreclosure the bid was $100, leaving a deficiency judgment in the sum of· $6,049.62. In the Equitable case the bid was $24,345.16, leaving a deficiency judgment of $2,000. Subsequently the matter of appointment of a receiver came on before the court and supplemental decree covering receivership was filed. The rents, income, and profits of the land for the season of 1931 to March, 1932, were awarded to the Equitable Life Insurance Company, but the court under the Oviatt foreclosure appointed a receiver

to collect the rents, income, and profits from the date of the supplemental decree during the time of redemption. From this the Equitable appealed. This court said on page 702:

"The mortgage of the Equitable conveyed not only the land described, but also all the rents, issues, uses, profits, and income therefrom, and the crops raised thereon from the date of this settlement until the debt secured hereby shall be paid. This mortgage was indexed in the chattel mortgage record of Page county, as provided by statute, on the 14th day of April, 1928."

The court then calls attention to the fact that in the Farmers Tr. & Sav. Bank case it had held that "such a provision in a real estate mortgage was, in fact, a chattel mortgage." It then calls attention to the fact that the Oviatt mortgage foreclosure was started on the 24th of July, 1931. Then it calls attention to the fact that the provisions for a receivership such as existed in the Oviatt mortgage did not create a lien until the proceedings were instituted for foreclosure, and a receiver is prayed for. Hence, up to the 24th day of July, 1931, Oviatt had no lien on the crops, rents, income, or profits, and that the lien of the chattel mortgage of the Equitable Insurance Company, being of prior date and duly recorded, would be superior to the rights of Oviatt under his receivership, and pointed out that neither the chattel mortgage nor the rights of Oviatt under his lien is void because the property was not in existence at the time it arose. The court then says, beginning at the bottom of page 702:

"At this point, therefore, the Equitable, under its chattel mortgage, and Oviatt, under his lien created by the foreclosure, stood in exactly the same position, each standing there waiting for the crops to come into existence; or, in other words, they were waiting for the crops to grow into their liens. When the crops came into existence, the respective liens would attach at exactly the same time. In other words, one lien would not attach before the other. Their equities, therefore, were equal. The question, therefore, is: Which party is entitled to the crops for the season commencing March 1, 1932?

"It is a maxim of equity that, as between equal equities, the first in order of time shall prevail. The only interest that either Oviatt or the Equitable had in the crop that was to be planted for 1932 was a contract for a lien enforceable in equity, and, as

neither can be held to attach before the other, their equities must be held to be equal.

"As to the application of the balance of the maxim, the contract for a lien of the Equitable arose on the date of the mortgage, to wit, April 6, 1928, and the contract for the lien of Oviatt arose on the date he filed petition for foreclosure of his mortgage, which was July 24, 1931; hence the rights of the Equitable were first in order of time, and must prevail. In other words, under the application of this maxim as to the rent for the year commencing March 1, 1932, the rights of the Equitable to the crops for that farm year are superior to the rights of Oviatt.

"The Equitable had similar provisions in its mortgage to those in the Oviatt mortgage with reference to the appointment of a receiver. The court, therefore, should have recognized the superior rights of the Equitable mortgage and should have appointed a receiver for that company instead of for Oviatt."

In Soehren v. Hein, 214 Iowa 1060, 243 N. W. 330, the court holds that under a combined real estate and chattel mortgage of the rents, the mortgagee, as against parties not subsequent purchasers for value and without notice, acquires a lien from the date of the execution of the mortgage.

 It seems to us that these decisions leave without question that in this case the Equitable Life Insurance Company, by its mortgage, secured a lien on the rents, issues, and profits of the mortgaged premises as against everybody except subsequent encumbrances or purchasers in good faith. That it was a valid and subsisting lien on the rents and profits of the farm at the time of the commencement of the foreclosure. That no court would have any right whatever to take any part of the rents, issues, and profits on the land from the Equitable Life Insurance Company, than it would have to take, say, other chattels, such as bonds and securities, pledged as collateral security for the payment of the mortgage. We think in fact that the court in the instant case had no right to take any part of the rents, issues, or profits and turn it over to the defendant McNamara. There is no provision in the statute, chapter 182 of the Acts of the 45th General Assembly, that would warrant any such action as against a chattel mortgage.

This case does not come within the reasoning of the Des

Moines Joint Stock Land Bank v. Nordholm, 217 Iowa 1319, 253 N. W. 701; nor within the reasoning of Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481. In these cases they were taking no right from the mortgagee. They were leaving him where he would be protected and where he would have all the property pledged. They were simply deferring the enjoyment of those rights. In the case at bar, to take from the Equitable its rights under the chattel mortgage portion would be to confiscate and take away from it that which had been pledged to pay its mortgage. The statute does not authorize it, and the courts have no power to go beyond the statute in such cases.

Hence, any order or decree should provide that the rents, issues, and profits of the land covered by the mortgage go to the plaintiff to be applied upon the debt due from McNamara to the Equitable. In other words, that the Equitable is entitled to the rents, issues, and profits as they are covered by its chattel mortgage, and that McNamara has no right or interest in these proceeds except to see that they are properly applied to the extinguishing of his debt, either by the payment of taxes, the interest on the debt, or on the principal. While we are of the opinion that the court in taking any portion of the rents, issues, and profits from the plaintiff was wrong, yet under the circumstances and evidence in this case we do not feel inclined to reverse it.

Therefore, the case is modified as pointed out in this opinion, and the court below directed to make such orders as will conform to this opinion, and as modified is affirmed.

ANDERSON, C. J., and ALBERT, DONEGAN, KINTZINGER, and RICHARDS, JJ., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

Original opinion adhered to with supplemental opinion.

PARSONS, J.—A printed matter headed ''Petition for Rehearing'' was filed in this case by the defendant subsequent to the filing of the original opinion. The petition for rehearing really asks for an interpretation of the opinion filed herein and published as above, as to the rents, issues, and profits involved in the case.

■■■ The original opinion points out that the mortgage involved is dual in character, a real estate mortgage and a chattel

mortgage. The so-called moratorium statutes apply only to real estate mortgages, not to chattel mortgages; hence, so far as the rights of the parties are concerned in this case, the chattel mortgage is to be enforced as if no real estate mortgage existed; i. e., to give to the plaintiff, subject to the right of the defendant, the right to have proper application made of the amounts realized from the property covered by the chattel mortgage.

■■■ The mortgage set out in the petition filed in the case was in the form approved by this court as a proper chattel mortgage in Farmers Trust & Savings Bank v. Miller, 203 Iowa 1380, 214 N. W. 546. In other words, following the description of the real estate covered by the real estate part of the mortgage, and in the granting clause there was set forth, ''and also all the rents, issues, uses, profits and income therefrom, and the crops raised thereon from the date of this instrument until the debt secured shall be paid in full.''

The defendant had no right to collect these amounts. The chattel mortgage portion covered all of the above rights quoted. In other words, it gave to the plaintiff the right to take all the rents, issues, uses, profits, and income from the lands, and the crops raised thereon, from the date of the instrument until the debt secured was paid in full. Concededly in this case the debt has never been paid. Instead of being paid, it has grown from the original amount of $22,000 until on the 26th of September, 1934, it amounted to $25,990.08, being the amount the judgment was taken for on default, which is mentioned in the original opinion, but which was set aside to permit the defendant to make defense.

As the mortgage is written, it is the right of the plaintiff to receive or take possession of all of the property covered by the chattel mortgage. There have been no acts of the legislature which interfere with the right of the plaintiff to have full protection under this chattel mortgage. The plaintiff has the right to collect these.

The record in this case shows that after the judgment obtained by default was set aside, the defendant proceeded to reduce to his possession the property covered by the chattel mortgage of the plaintiff, and that he did not pay it into court for quite awhile, and the court below ordered it paid in, and it was finally partially paid in, but whatever it was, it could not in any way be distributed by the court legally, except to the plaintiff.

■■■ The defendant had no right to collect these and then make conditions under which he would pay them in. The record shows that the defendant's financial condition is such that to turn, in the future, the property covered by the chattel mortgage, over to the defendant is to endanger the right of the plaintiff to finally realize on this. The actions of the defendant in the case show also that if he gets possession of this property and acts as he acted in the past, he will make it difficult for the plaintiff to realize anything therefrom, or anything like what belongs to the plaintiff, and that to allow the defendant to get possession of the property covered by the chattel mortgage is to endanger the plaintiff in its rights to have the income from the farm applied as provided in the mortgage.

The defendant seems to be possessed with the idea that he has the right to take these rents from this property and hold them until he gets ready to turn them over, and then on his own conditions. Such being the case, we are of the opinion that the plaintiff is entitled, upon application therefor, to a receiver to collect the property covered by the chattel mortgage until the debt is fully paid; and that the defendant can do nothing to interfere with the plaintiff's right because of the chattel mortgage.

Of course the plaintiff must apply whatever amounts are realized to the protection of the defendant as well as itself. This view is consistent with and follows the action of this court in Farmers Trust & Savings Bank v. Miller, 203 Iowa 1380, 214 N. W. 546. It simply recognizes the proposition that the court has no right to take any part of the money derived under the chattel mortgage, have it paid over to the clerk, and distribute it in the way and manner that is provided to distribute money coming into the hands of the clerk under the so-called moratorium statutes. So, the decision affirming the lower court will stand as approved in the original opinion, and as pointed out in this supplemental opinion.

ANDERSON, C. J., and ALBERT, DONEGAN, KINTZINGER, and RICHARDS, JJ., concur.