EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellee, v. NATHANIEL BROWN et al., Appellants; CLAYTON N. BROWN et al., Defendants; J. M. HENDERSON, Intervener.

No. 42855.

JULY 17, 1935.

REHEARING DENIED DECEMBER 19, 1935.

John D. Randall and Dean Stauffacher, for appellants Nathaniel Brown and Farmers Savings Bank.

Carl M. Adams, and Frank C. Byers, for appellee.

HAMILTON, J.—The defendant, Clayton N. Brown and his wife, Alice Noble Brown, on May 18, 1928, executed two promissory notes in the total principal sum of $14,250, being the notes in suit, and to secure the same simultaneously therewith executed and delivered to plaintiff a mortgage which is in the usual form of real estate mortgages, containing. a chattel mortgage clause, the granting clause of which is in the following language:

"Does hereby sell and convey unto the said second party, its successors and assigns forever (certain real estate, describing it) * * * *and also all the rents, issues, uses, profits and income therefrom and the crops raised thereon from the date of this instrument until the debt secured hereby shall be paid in full.*

"To have and to hold the premises above described with all the appurtenances thereunto belonging, and all estate, title, dower, right of homestead and claims whatsoever of said first party unto the said second party, its successors and assigns forever."

In the defeasance clause provision is made for the appointment of a receiver to take possession of said property, both real and personal, pending foreclosure sale and redemption, and to collect the rents, etc. The mortgage was duly filed for record and recorded in the regular real estate mortgage records of the county, and was also indexed in the chattel mortgage index records on May 21, 1928.

This suit was started by the filing of a petition in the district court of Linn county, Iowa, on March 20, 1934. Prior to the filing of the petition, to wit: on October 16, 1933, the defendant Clayton N. Brown, who was the owner of said real estate and the mortgagor, entered into a written lease with the intervener, J. M. Henderson, for the year beginning March 1,

1934, the rental stipulated being $900, evidenced by two promissory notes, one for $400 and one for $500, due respectively on December 1, 1934, and February 1, 1935. On November 27, 1933, this lease was assigned in writing by said Clayton N. Brown, for a valid consideration, to his father, the defendant, Nathaniel Brown. On February 17, 1934, another written lease was entered into between the defendant Clayton N. Brown, and the intervener, J. M. Henderson, leasing said premises to Henderson for the term of one year beginning March 1, 1935, the rental stipulated being $900, evidenced by two promissory notes, one for $400 due December 1, 1935, and one for $500 due February 1, 1936. On March 18, 1934, this lease was likewise assigned in writing by said Brown for a valid consideration to the defendant Farmers Savings Bank of Martelle, Iowa. The rent notes in each instance were likewise transferred to the assignee at the time of the making of the assignment of said respective leases.

The petition is in the usual form and prays for judgment against the mortgagors and against the real estate, and that the judgment be decreed to be a lien upon the mortgaged premises from the date of said mortgage, and upon the rents, issues, profits, and crops, and that said mortgage be foreclosed, both as a chattel mortgage, and as a real estate mortgage, and for the appointment of a receiver and for general equitable relief.

The lessee, J. M. Henderson, intervened, setting up the fact of the execution of said leases prior to the commencement of said foreclosure suit, and the subsequent assignment of said leases to the appellants, and alleging he had subleased said premises to the defendants Henry Coligan and wife, and the occupancy of same by said sublessees, and asking and praying that his rights under said leases be decreed to be paramount to any lien of plaintiff, and further, that the court find and determine who is entitled to receive the rent under said leases, and for general equitable relief.

Separate answers were filed by the defendants Clayton N. Brown and Alice Noble Brown, makers of the notes and mortgage sued upon, setting up practically the same allegations with reference to the leasing of said premises, denying the security is inadequate and plaintiff's right to the rents and to a receiver, the wife also averring she is not personally bound, having signed as wife for the sole purpose of releasing her dower interest.

The issues as to the right to rents and profits were raised by separate answer of each of the appellants. By way of amendment to the original petition and by reply, the plaintiff averred that by virtue of the terms and provisions of its mortgage it acquired a first and prior lien on the leases and notes aforesaid, immediately upon their execution, and that said lien was prior to any rights whatsoever of the defendants or said intervener.

The case was tried on a stipulation of facts and a decree was rendered in favor of the plaintiff for the full amount of the indebtedness found to be due, the decree providing:

"Judgment is hereby rendered and entered against the defendants, Clayton N. Brown and Alice Noble Brown and the real estate hereinafter described and also against the rents, issues, uses and profits from the said real estate * * * and said judgment is hereby decreed to be a first and prior lien on and against the mortgaged premises, to-wit: (Here follows a description of the real estate) from the date of the mortgage declared on, to-wit: May 18, 1928. * * * That a special execution issue against the above described mortgaged premises to make and satisfy said total sum and judgment and costs and accrued costs, and that the premises above described or so much thereof as is necessary to be sold at special execution sale. * * * That the plaintiff, by virtue of the terms and provisions of its mortgage and the commencement of this action, acquired and has a first and prior lien against all of the rents, issues, uses, profits and crops from the real estate hereinbefore described and that the said lien is prior and superior to any interest, lien, right or title which the defendants or any of them, or the intervener, may have or claim."

The decree further provides for the appointment of a receiver and for the issuance of an injunction restraining the disposition of the leases or rent notes involved in this litigation. From this decree the defendants Nathaniel Brown and Farmers Savings Bank of Martelle, Iowa, have appealed to this court.

The specific grounds pointed out and argued by the appellants and relied upon for reversal are: (1) The so-called "chattel mortgage clause" in real estate mortgages is effective only as to crops and is a chattel mortgage only by virtue of the use of the word "crops", and if the decree of the court is to be

construed as giving the plaintiff a first lien on the rents, issues, and profits by virtue of the so-called "chattel mortgage clause", the court erred in so holding. (2) Rents, issues, uses, profits, and income of real estate are incorporeal rights, and are therefore not such personal property as is subject to a chattel mortgage, and the so-called "chattel mortgage clause" would not be effective to give a lien on these incidents to title from the time of the execution and filing and/or indexing of the mortgage, and the court, therefore, erred in holding that the indexing of the mortgage gave to the plaintiff, by virtue of its so-called "chattel mortgage clause" any rights superior to the rights secured by the plaintiff by virtue of the defeasance clause in its mortgage. (3) Because the mortgagor did not raise the crop, the chattel mortgage on the crop was not effective, as a crop was not raised by the individual who executed the mortgage. (4) The attempt to cover the rents, issues, uses, and profits by the so-called "chattel mortgage clause" being ineffective, the lien of the mortgage as to the rents and profits would not become effective until the filing of the petition. (5) The assignment of the leases for valuable consideration before the commencement of the foreclosure action gives to the assignees of said leases the right to the rents during the period of redemption, and the court erred in holding that the plaintiff secured any rights to the rents, issues, profits, and income until the filing of the foreclosure petition and in holding that the plaintiff has any right superior to the rights of the assignees. (6) The court, in its judgment, provided for the sale of the real estate and appointed a receiver to collect the rents. That under the theory of the decision of the court, the rents, issues, uses, profits, and income of the real estate were only secondary security, the real estate being the primary security. That said decision was under and by virtue of the defeasance clause and not the granting clause, and any attempted interpretation which would involve the possession of the land and the rents, income, and profits in the plaintiff or in the receiver, is erroneous.

■■■ It will thus be seen that appellants attempt to distinguish between the use of the word "crops" and the words "rents, issues and profits." It requires only a casual examination of our prior holdings to ascertain that, as applied to receivership matters in connection with the foreclosure of mortgages, these terms have been used synonymously and interchangeably

for many years in this state, and the terms have come to have well understood and defined meanings as used in the drawing of mortgages and in the decrees of the trial courts generally throughout the state and in the opinions of this court. The phrase "rents, issues and profits" as distinguished from the land itself refers to the products of the land, the annual rentals, the income derived therefrom, whether in money or in products. 54 C. J., page 385. It has been said that "to cultivate and have the use of the lands is to receive the rents and profits." Where one by lease agrees to pay a certain sum for the right to cultivate and use the land, the sum so stipulated is rent, and represents the landlord's share in the issues and profits of the land, and where the lease provides for a share of the crop, the share of the crop represents the landlord's portion of the issues and profits derived from the use and cultivation of the land. Part of it may be paid in cash and part of it in crops or products. Early v. Friend, 16 Grat. (Va.) 21, 78 Am. Dec. 649, at page 660. The word "profits" as used in the phrase "rents, issues and profits" is synonymous with "rents." 50 C. J., page 646, Note O.

In so far as we have been able to ascertain, this court has never been confronted with the proposition of drawing the distinction called for by appellants' argument in this case. To make such distinction would be highly technical and would tend to disturb and unsettle long-established usage and custom in the use of these expressions, which have grown to have well-defined meanings. Equity regards the substance and not the form. Furthermore, it has long been the rule in this state that a valid chattel mortgage may be given on merchandise not in existence and on crops which have not been planted, and likewise for claim upon money not earned and upon notes and book accounts generally. The general rule is that in the absence of statutory provisions to the contrary any personal property which is capable of being sold or which has an actual or prospective existence may be mortgaged. Sandwich Mfg. Co. v. Robinson, 83 Iowa 567, 49 N. W. 1031, 14 L. R. A. 126; Lawrence v. McKenzie, 88 Iowa 432 at page 440, 55 N. W. 505; Davis v. Pitcher, 97 Iowa 13, 65 N. W. 1005, 59 Am. St. Rep. 392. We therefore hold that the wording of the chattel mortgage clause in the mortgage in controversy in this case is sufficient, not only to cover the crops, but rents, issues, and profits, and that the writ-

ten leases and rent notes accompanying the same, involved in this litigation, come within the classification of rents, issues, and profits of the real estate, and that the same were conveyed in the granting clause of the mortgage in question.

■■■ This being true, the next question which arises is: When did the lien of plaintiff's mortgage attach? If, as contended by appellants, the language in the mortgage is insufficient as a chattel mortgage, then the indexing of the same in the chattel mortgage index would not be effective to impart notice of the creation of a lien. A brief examination of the recent pronouncements of this court will clarify the matter and furnish a basis for a proper conclusion in the instant case.

In the case of Farmers Trust & Sav. Bank v. Miller, 203 Iowa 1380, 214 N. W. 546, the language used in the mortgage was as follows:

"Also all of the rents, issues, use, and profits of said land and the crops raised thereon from now until the debt secured thereby shall be paid in full."

In the case of Soehren v. Hein, 214 Iowa 1060, 243 N. W. 330, 331, there were two mortgages involved. In the first mortgage the language was as follows:

"To have and to hold the premises above described, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, and the rents, issues, products, and profits thereof, unto the second party (mortgagee) his heirs and assigns forever."

And in the second mortgage the clause is as follows:

"Together with the rents and profits, issues, income, and use thereof from this date until this mortgage is fully paid."

In each of these cases we held that the language so used, taken in connection with other provisions of the mortgages relating to the rents and profits, was sufficient to constitute a valid chattel mortgage. Hence, we find that we have here in the case before us a valid chattel mortgage, covering the rents, issues and profits and crops of the mortgaged real estate, pledged as primary security for the indebtedness, which mortgage was executed properly, filed, and recorded in the real estate mortgage records and indexed in the chattel mortgage index long prior

to the time of the execution and assignments of the leases in question.

■■■ Prior to the provision of our statute relating to the indexing of real estate mortgages embracing chattel mortgage clauses in the chattel mortgage index, which was enacted by the Thirty-ninth General Assembly, chapter 246, and is now embraced in Code section 10032 of the 1931 Code of Iowa, the practice on the part of mortgagors in distress of leasing the premises and assigning the lease prior to the commencement of foreclosure proceedings became quite prevalent throughout the state, which called for the enactment of the statutory provision above referred to, and it is now the settled rule in this state that the lien on the rents and profits created by the chattel mortgage clause in real estate mortgages such as we have under consideration in the instant case, when held to be sufficient in form and substance, is effective from the date of the execution of the mortgage and not from the date of the filing of the petition of foreclosure in which the appointment of a receiver is asked, as formerly.

This court, speaking through Justice DeGraff in the case of Soehren v. Hein, 214 Iowa 1060, 243 N. W. 330, 332, said:

"The question arises as to when a lien first arose, if at all, in favor of Soehren, trustee [mortgagee], upon the rents and profits. As against parties, not subsequent purchasers for value and without notice, a lien was created upon the rents and profits in favor of Soehren, trustee, at the date of the execution of his mortgage. This is because the language of his mortgage, as herein quoted, was sufficient to constitute a chattel mortgage, if segregated from the other portions of the instrument." Citing Farmers Trust & Sav. Bank v. Miller, 203 Iowa 1380, 214 N. W. 546. See, also, Equitable Life Ins. Co. v. Reed, 215 Iowa 700, 246 N. W. 779; Capital City State Bank v. Riser, 215 Iowa 680, 246 N. W. 763.

If the chattel mortgage provisions in the real estate mortgage are sufficient to constitute a valid chattel mortgage on the rents, issues, profits and crops, then from the time it was indexed in the chattel mortgage record index it was notice to the world of the claim and rights of the plaintiff to a lien, not only on the land itself, but upon the rents, issues, and profits and crops grown thereon. Therefore, when the intervener, Henderson, leased the premises from the owner of the real estate and

the maker of the original notes and mortgage, he did so with constructive notice of the fact that the rents, issues, and profits and crops produced upon the real estate were covered by this mortgage, and having this notice and knowledge, his rights as lessee as against the plaintiff could rise no higher than those of his lessor, the owner of the mortgaged premises. Sheakley v. Mechler, 199 Iowa 1390, 203 N. W. 929. Likewise, it is a well-established principle in this state that the assignees of the leases in question could acquire no higher or greater rights as against the plaintiff than those of their assignor. Boyce v. Farmers Mutual Ins. Assn., 209 Iowa 11, 227 N. W. 523; Roe v. King, 217 Iowa 213, 251 N. W. 81.

It should be remembered that the appellants are before this court under the issues in this case in the capacity of assignees of the leases and rent notes, and not as holders in due course of negotiable paper. It should likewise be borne in mind that the original maker of the notes and mortgages is still the owner of the real estate, and the rent provided for in said leases accrued to him. The cases cited and relied upon by appellants in the second division of their brief and argument, holding that "accrued rents are an incident to the reversion and follow the land and pass with the sale or division of the land," have no application to the facts in this case. The written leases and notes were valid and binding obligations upon the lessee to pay to the owner of this real estate, the lessor, the amounts provided for therein. The validity of said rent notes and written leases did not depend upon the production of a crop. Henderson was bound to pay the rent stipulated, whether he produced a crop or whether he failed to produce a crop. These instruments represented the landlord's share of the rent which the lessee undertook to pay for the right to cultivate and use and take from the soil the entire issues and profits and income therefrom for the years covered by said leases. As soon as they were executed and delivered they became effective and binding obligations, and the lien of plaintiff's mortgage attached thereto in the hands of the mortgagor immediately upon their execution and delivery to him.

In the case of Capital City State Bank v. Riser, 215 Iowa 680, 246 N. W. 763, a lease was involved and the stipulated rent was evidenced by promissory notes, as in this case. The notes were still in the hands of the receiver of the bank, the beneficial

payee of the rent notes. A receiver was asked for and the court held that the language of the mortgage was sufficient to constitute a chattel mortgage upon the rents, issues, uses, and profits of the land described and the crops raised thereon from the date of its execution and recording, and that the rent notes or proceeds therefrom in the hands of the receiver should be paid to plaintiff. If the assignees' title can rise no higher than the rights of his assignor, then our holding in the Riser case, supra, is decisive of this case. In so far as the lease for the year beginning March 1, 1935, is concerned, it is a well-established principle that a mortgagor is without the power as against the purchaser at foreclosure sale to make a lease extending beyond the period of redemption which would be valid against such purchaser or which would as against him operate to convey the rents and profits accruing after such expiration. Keokuk Trust Co. v. Campbell, 205 Iowa 414, 215 N. W. 960.

■■ Appellants' contention that the case below was tried on the theory that the rents and profits were only secondarily liable and that the decree does not in specific terms foreclose the chattel mortgage on the rents and profits and order the same sold under special execution, is, as we think, without merit. If their contention in this respect were true, it would be of no benefit to the appellants to have the case reversed and remanded. The case is triable de novo here, and under the facts we are compelled to find, as the court below specifically found, that the plaintiff under the provisions of its mortgage, from the time of the execution and delivery of same, as against parties not subsequent purchasers for value and without notice, had a first and prior lien upon the rents, issues, uses, and profits from the real estate involved, and that said lien attached to the leases and rent notes immediately upon their execution and delivery to the defendant, the original mortgagor and owner of said real estate, and that the right and title acquired in and to said leases and rent notes by the appellants was junior and inferior to the lien and claim of the plaintiff under its chattel mortgage. A receiver was appointed and specifically directed to take charge of the leases and notes and collect the same. The fact that under the provisions of the decree the real estate was ordered sold first, is and can be, in no way prejudicial to appellants. It would serve no useful purpose for this court to order a reversal and remand the case with instructions to prepare a de-

cree providing for the sale of the leases and rent notes. To do so would only entail additional costs and expense and would be of no benefit to appellants. The owner of the real estate is not complaining.

We find no prejudicial error in the record. The decree and judgment of the trial court is accordingly affirmed.—Affirmed.

KINTZINGER, C. J., and PARSONS, ANDERSON, DONEGAN, ALBERT, MITCHELL, and POWERS, JJ., concur.