EQUITABLE LIFE INSURANCE COMPANY, Appellant, v. HENRY READ et al., Appellees.

L. E. OVIATT, Appellee, v. HENRY READ et al., Appellees; EQUITABLE LIFE INSURANCE COMPANY, Appellant.

No. 41584.

FEBRUARY 14, 1933.

Henry & Henry, Carl M. Adams, and Stephens, Thornell and Millhone, for appellant.

Henry Read, for Henry Read and Themis Read, defendants.

Ferguson & Ferguson, for L. E. Oviatt, appellee.

ALBERT, J.—Henry Read was the owner of the 200-acre farm which is involved in this controversy. On April 6, 1928, he secured a loan from the Equitable Life Insurance Company and secured the same by a mortgage, signed by him and his wife. This mortgage was filed of record on the 14th day of April, 1928.

On the 12th day of April, 1928, Read and his wife executed a second mortgage on said real estate to secure a note in the principal sum of $6,000 to one L. E. Oviatt.

On the 24th day of July, 1931, Oviatt commenced a foreclosure of his mortgage and asked the appointment of a receiver. On August 13, 1931, the Equitable Life commenced a foreclosure of its mortgage, and also asked the appointment of a receiver. Both mortgages provided for the appointment of a receiver on breach thereof.

On August 15, 1931, the Equitable Life filed a petition of intervention in the Oviatt foreclosure. These cases were consolidated, and on January 25, 1932, a decree was entered in each of the foreclosure cases, reserving, however, the question of the appointment of a receiver. Pursuant thereto, special execution was issued and sale was made, each mortgagee being the only bidder at the respective sales. On the Oviatt foreclosure the bid was $100, leaving a

deficiency judgment of $6,049.62. This sale occurred on the 20th day of February, 1932. In the Equitable foreclosure, the bid was $24,345.16, leaving a deficiency judgment of $2,000. This sale was on February 25, 1932.

On the 24th day of March, 1932, the matter of the appointment of a receivership came on before the court, and on the second day of April, 1932, a supplemental decree covering the receivership was filed. Under the holding of the court, the rents, income and profits of the land for the season of 1931 to March 1, 1932, were awarded to the Equitable Life Insurance Company, but the court, under the Oviatt foreclosure, appointed a receiver to collect the rents, income and profits from the date of the supplemental decree during the time of redemption, and it is from this latter part of the decree, giving Oviatt the benefit of the receivership, that the Equitable Life Insurance Company appeals.

The mortgage of the Equitable conveyed not only the land described, but also all the rents, issues, uses, profits and income therefrom, and the crops raised thereon from the date of this settlement until the debt secured hereby shall be paid. This mortgage was indexed in the chattel mortgage record of Page county, as provided by statute, on the 14th day of April, 1928.

Under the decision in Farmers Trust & Savings Bank v. Miller, 203 Iowa 1380, we held that such a provision in a real estate mortgage was, in fact, a chattel mortgage.

We have long since settled the rule in this state that a provision for a receivership, such as that existing in the Oviatt foreclosure, does not create a lien until the proceedings are instituted for foreclosure and a receiver is prayed for. The Oviatt mortgage foreclosure was started on the 24th day of July, 1931; hence, up to that date Oviatt had no lien on the crops, rents, income or profits, and the lien of the chattel mortgage of the Equitable, being of prior date and duly recorded, would be superior to the rights of Oviatt under his receivership. But the 1932 crop was not in existence at the time the chattel mortgage was given, or at the time Oviatt acquired the lien by starting the foreclosure and praying for a receiver. Neither the chattel mortgage nor the rights of Oviatt under his lien is void because the property was not in existence at the time they arose. See Scharfenburg v. Bishop, 35 Iowa 60; Wheeler v. Becker, 68 Iowa 723; Norris v. Hix, 74 Iowa 524.

At this point, therefore, the Equitable, under its chattel mort-

gage, and Oviatt, under his lien created by the foreclosure, stood in' exactly the same position, each standing there waiting for the crops to come into existence; or, in other words, they were waiting for the crops to grow into their liens. When the crops came into existence, the respective liens would attach at exactly the same time. In other words, one lien would not attach before the other. Their equities, therefore, were equal. The question, therefore, is: Which party is entitled to the crops for the season commencing March 1, 1932?

It is a maxim of equity that as between equal equities, the first in order of time shall prevail. The only interest that either Oviatt or the Equitable had in the crop that was to be planted for 1932 was a contract for a lien enforcible in equity, and, as neither can be held to attach before the other, their equities must be held to be equal.

As to the application of the balance of the maxim, the contract for a lien of the Equitable arose on the date of the mortgage, to wit, April 6, 1928, and the contract for the lien of Oviatt arose on the date he filed petition for foreclosure of his mortgage, which was July 24, 1931; hence, the rights of the Equitable were first in order of time and must prevail. In other words, under the application of this maxim as to the rent for the year commencing March 1, 1932, the rights of the Equitable to the crops for that farm year are superior to the rights of Oviatt.

The Equitable had similar provisions in its mortgage to those in the Oviatt mortgage with reference to the appointment of a receiver. The court, therefore, should have recognized the superior rights of the Equitable mortgage and should have appointed a receiver for that company instead of for Oviatt.—Reversed.

All the Justices concur.