FIRST JOINT STOCK LAND BANK of Chicago, Appellee, v. CLAUDE S. ARMSTRONG et al., and D. W. BATES, Receiver, Appellants.

No. 43005.

OCTOBER 15, 1935.

Jones & White, for appellants.

Buell McCash, and H. H. Lommen, for appellee.

Powers, J.—■■■ Both mortgages in this case cover the same land. It is not claimed that either contained in the granting clause a chattel mortgage provision. Both mortgages contained, remote from the granting clause, a pledge of the rents, issues, and profits to the payment of the mortgage debt and a stipulation that in event of foreclosure a receiver might be appointed to collect such rents, issues, and profits and apply them on the mortgage debt. The holder of the second mortgage filed a petition to foreclose and prayed for the appointment of a receiver in 1931. The holder of the first mortgage commenced such an action on his mortgage in March, 1934. The priority of their respective claims to the rents, income, and profits of the mortgaged premises for 1934 are involved. It is well settled in this state by a long line of cases that a pledge of rents and profits remote from the granting clause does not, in itself, create any lien upon such rents and profits. Owen v. Fink, 218 Iowa 412, 255 N. W. 459; Andrew v. Home Savings Bank, 215 Iowa 401, 246 N. W. 48; Sheakley v. Mechler, 199 Iowa 1390, 203 N. W.

929. It is equally well settled that such a clause does become effective and creates a chattel mortgage lien when the payments on the mortgage are in default and action is brought to foreclose and for the appointment of a receiver. Andrew v. Haag, 215 Iowa 282, 245 N. W. 436; Equitable Life Ins. Co. v. Read, 215 Iowa 700, 246 N. W. 779. It follows that where there are two mortgages covering the same property and containing such a clause, the one which first starts action to foreclose obtains the first lien. Andrew v. Haag, supra. These general propositions do not seem to be seriously in dispute between the parties, nor to have been ignored by the trial court.

The trial court found that they were not applicable to this situation, however, for two reasons: First, because the provisions of chapter 181 of the Acts of the 45th General Assembly (§12383-e1, C., '35) changed the rule and made the lien of pledges of rents and profits in real estate mortgages covering the same land of the same priority as the lien of the mortgages on the real estate in which they are contained; and, second, that the lien of such provision in the second mortgage in the case at bar became junior to such provision in the first mortgage by reason of the fact that there was incorporated in the second mortgage a provision that it was, "subject to a first mortgage to the First Trust Joint Stock Land Bank of $10,000.00". The correctness of the court's ruling on these two propositions is the battleground of this appeal.

I. If chapter 181 of the Acts of the 45th General Assembly (§12383-e1, C., '35) is applicable in this situation, it has the effect of making the pledge of the rents and profits in the second mortgage junior to the pledge of the rents and profits in the first mortgage. See Section 1, chapter 181, Acts of the 45th General Assembly. That act became effective on March 2, 1933. It provides, in terms, that it shall not affect pending litigation. Section 4. Long before it became effective and on December 5, 1931, L. A. Andrew, who was the predecessor of D. W. Bates, as receiver for the Agency Savings Bank, had commenced an action to foreclose the second mortgage in this case and for the appointment of a receiver to collect the rents and profits, and such action was pending when chapter 181, Acts of the 45th General Assembly, became effective. Appellee's contention is that the pendency of that action was not "pending litigation" within the meaning of the saving clause in the Act of the 45th Gen-

eral Assembly, because appellee was not a party to that action. But the only necessary party to the action brought by the holder of the second mortgage was Armstrong, who gave the mortgage and who owned and lived upon the land covered by the mortgage at the time the action was instituted. There was no need of making appellee, the holder of the first mortgage, a party at the time the action was commenced. Where an action has been commenced and all parties necessary at the time of its institution are made parties thereto, it is difficult to see why it is not pending litigation. If we say now that chapter 181 applies in this case, and that by reason thereof the plaintiff in that action has lost a right which he had when his action had been commenced, we would be holding that the act of the legislature took away from a plaintiff in a pending case something which he had when the act was passed. Such a holding would necessarily be a holding that pending litigation was affected by the act. That is the very thing forbidden by the terms of the act itself. It is obvious, therefore, that we cannot so apply the act as to take away from a plaintiff in an action pending when the act was passed a right which he had acquired by the institution of such action without violating the provisions of the act that it shall not apply to pending litigation. It is equally obvious that to hold that the saving clause of the act applies only to pending litigation between the holders of mortgages covering the same land would be to write into the saving clause of the act something which is not there.

Counsel for appellee argues, however, and the trial court seems to have been intrigued by the idea, that by the application of the act of the 45th General Assembly nothing would be taken away from appellant; that he did not acquire a lien on the crops or income for the year 1934, by his action started in 1931, and did not have such a lien in 1933, when the legislative act was passed; that he could not have such a lien because the crops for 1934 were not then in existence. The argument necessarily assumes that the holder of a real estate mortgage containing a pledge of the rents and profits who has started action to foreclose and to have a receiver appointed has no greater claim to future rents and profits than the holder of such a mortgage who has not started action to foreclose. Therein lies its fallacy.

It is true that there can be no lien upon crops not in exist-

ence. It is equally true, however, that a mere pledge of rents and profits in a real estate mortgage does not create any right to rents and profits whatever. Such a clause is construed with the defeasance clause and has no life breathed into it until there has been default, and action to foreclose and have a receiver appointed has been commenced. It is well settled, however, that when the holder commences such an action, as the holder of the second mortgage did in this case, that such a pledge then comes to life and begins to speak and is a lien from that date, not only upon the crops in being, but those to be grown thereafter until the expiration of the period of redemption. Of course, as to crops and rents not yet in existence, there can be no actual lien, but there is a definite right created. That right may not be easy of definition or description, but its existence has been repeatedly recognized by this court. It has been called a potential lien, an equitable lien, and lien on property having a potential existence. But whatever it be called, and whatever be the philosophical process by which it is carried over from the time it is created until it attaches to crops in being, there is no mistaking the fact that during that interval the structure of the lien is there as to future crops. Nothing remains but for the crops to grow into it. All our cases dealing with the question recognize that the lien created by the action to foreclose and the application for a receiver is not limited to crops then in existence. No distinction is made in any of those cases between the crops in being when action is commenced and crops to be grown thereafter. Under the rule of those cases, including the case of Equitable Life Insurance Co. v. Read, 215 Iowa 700, 246 N. W. 779, the right to the lien becomes fixed as of the time the action to foreclose is commenced and is applicable to crops to be grown in the future and is superior as to those crops to any other right to such a lien not previously created. Appellee's argument concedes, and the trial court held that the holder of the second mortgage under our decision would be ahead (except for the provisions of chapter 181, Acts of the 45th General Assembly). This, in itself, is a recognition that the holder of the second mortgage by his action to foreclose acquired something more than has the holder of a mortgage containing a pledge of rents and profits on which no action to foreclose has been commenced, and that such holder obtained a superior claim on

future crops, rents, and income until the expiration of the period of redemption.

Obviously, if it be said that the holder of the second mortgage in this case had no superior right to the crops of 1934 because of the provisions of chapter 181, Acts of the 45th General Assembly, then it cannot be said that said chapter is applicable because it does not affect the rights of the holder of the second mortgage. To do that would be to argue in a circle. We come back to the proposition that, unless we apply the act, we must recognize the superior right of the holder of the second mortgage who started his foreclosure action first. If we apply the act, we take away from a plaintiff in an action pending when the act was passed a right which he had acquired by virtue of having started said action. We are forbidden to do that by the clause in the act which says it shall not affect pending litigation.

This case is ruled by the decision of this court in First Trust Joint Stock Land Bank of Chicago v. Smith, 219 Iowa 658, 259 N. W. 192. The holders of the mortgages and the form of the mortgages in that case are identical with the case now at bar. While the fact is not stressed in the opinion, the record in that case fails to show that the holder of the first mortgage was a party to the action to foreclose the second mortgage pending when chapter 181, Acts of the 45th General Assembly was passed. It further appears from the record in that case that a part of the rents or issues there in controversy was not in being when the action to foreclose the second mortgage was commenced and when chapter 181, Acts of the 45th General Assembly became effective.

■■■ II. The second proposition on which the trial court based its ruling involves the proper interpretation of the provision of the second mortgage immediately following the description of the land in the mortgage. It is as follows: "Subject to a first mortgage to the First Trust Joint Stock Land Bank of $10,000.00." It will be noticed that the provision subjecting the grant of the lien to the mortgage of the First Trust Joint Stock Land Bank is inserted immediately following the description of the land and before the attempted grant of the lien upon the crops grown on the land. Strictly, therefore, it is the grant of the lien on the land which is made subject to the

Land Bank's mortgage, and not the grant of any lien on the crops.

The argument is that by reason of accepting a second mortgage containing the foregoing provisions, the holder is equitably estopped from now asserting that he holds the lien on the crops superior to that of the first mortgage. The short answer to that argument is that we have repeatedly held that as against the maker of such a mortgage who specifically promises and pledges the crops to the payment of the debt, there is no lien until action to foreclose has been commenced. Such, we say, is the correct interpretation of the promise or grant. If the man who makes the grant is not equitably estopped, how can it be claimed that the holder of a second mortgage who takes a right subject to the grant is equitably estopped? If the pledge, properly interpreted, does not create a right against the maker of it until action to foreclose has been commenced, it creates no such right against a third person who did not make the pledge, but who accepted a grant subject to it.

The case is not substantially different from that of Lynch v. Donahoe, 205 Iowa 537, 215 N. W. 736, 218 N. W. 144, where the second mortgage contained a covenant that the land was free from encumbrance except a mortgage in favor of the Midland Mortgage Company. It is true that in that case we recognized that the parties might by appropriate language make the pledge of rents and profits in the second mortgage junior to any right which the holder of the first mortgage might subsequently acquire therein. The quoted language from the second mortgage in this case, however, does not even deal with that subject. It would be an unusual case, indeed, where the provisions of the second mortgage could be relied upon as extending and enlarging the right which the holder of the first mortgage acquired under his own mortgage. The obvious purpose of the quoted language from the second mortgage in the instant case was to give notice of the existence of the first mortgage on the land. It probably would estop the holder of the second mortgage from asserting there was no lien on the land in favor of the First Trust Joint Stock Land Bank of Chicago for $10,000. It might even estop the holder of the second mortgage from asserting that the first mortgage was not in all respects what it purported to be. But it would be a rare case, indeed, where a

provision of a second mortgage would enlarge the rights which the first mortgage purported to vest in the holder.

The cases on which appellee relies at this point are all cases where the holder of the second mortgage has been held to be estopped from asserting the invalidity of the first mortgage lien when he has taken his lien subject to it. They are not applicable in the present situation because no question of the validity of the lien is involved. The holder of the first mortgage here is not denied a lien on the rents, crops, issues, and profits because the attempt to grant such a lien is invalid. On the contrary, we have held the grant of such a lien is valid, as where there is a chattel mortgage provision in the granting clause. The refusal to recognize that a lien on rents and profits has been created where there is a mere pledge, as in plaintiff's mortgage, is based on the interpretation of the instrument. It is held that the parties, by their contract, did not intend that pledge to become operative until there had been a default and action to foreclose had been commenced. The pledge is construed as a part of the remedy provided in the mortgage in case of default. It is obvious, therefore, that the holder of the second mortgage is not challenging the validity of the first mortgage, nor is he even claiming that it does not do what it purports to do. There is no dispute here but what the land is subject to a mortgage of $10,000 in favor of the First Trust Joint Stock Land Bank, but that mortgage, properly interpreted as between the parties to it, gives the holder of the mortgage no interest in the rents and profits until default and action to foreclose and have a receiver appointed has been commenced. That contract cannot be held to mean one thing as between the parties and another thing as between one of the parties and a third person. The interpretation of the mortgage applicable between the parties to the mortgage is equally applicable between the holder of the mortgage and a subsequent owner or subsequent mortgagee who takes subject to the mortgage.

We are of the opinion, therefore, that the trial court was in error in holding that the rule ordinarily applicable would not apply in this case because of the provisions of chapter 181, Acts of the 45th General Assembly, and because of the further fact that the second mortgage contained a provision that it was subject to a first mortgage in favor of the First Trust Joint Stock Land Bank of Chicago for $10,000. It follows that the

424

judgment of the trial court must be, and it is hereby, reversed.—Reversed.

KINTZINGER, C. J., and ALBERT, ANDERSON, MITCHELL, and HAMILTON, JJ., concur.