The **FEDERAL LAND BANK OF OMAHA,** Appellee,

v.

**John V. LOWER and Diana K. Lower,** Appellants.

**Farmers Trust & Savings Bank, Williamsburg, Iowa, Stuart Blythe, and Unknown Claimants,** Defendants.

No. 86–1393.

Supreme Court of Iowa.

March 16, 1988.

Scott H. Hughes, Council Bluffs, for appellants.

John C. Monroe, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and LAVORATO, JJ.

LAVORATO, Justice.

The only issue properly presented for our further review here is whether a mortgagor must account to a mortgagee's receiver for rent the mortgagor received on encumbered land during the period between the entry of a foreclosure decree and the request for appointment of a receiver.

John V. and Diana K. Lower, the mortgagors and defendants in this case, contend that a mortgage's lien provisions take effect only after the mortgagee has both commenced foreclosure and requested the appointment of a receiver. The Federal Land Bank of Omaha, the mortgagee and plaintiff, argues that when a mortgage, such as the one here, conveys rents along with the land, the mortgage itself creates the mortgagee's security interest in the rents.

The district court, choosing between two lines of arguably relevant cases, held that an accounting to the bank's receiver for rents was indeed required, and the court of appeals agreed. Because we also think that precedent indicates an accounting is necessary, given the type of mortgage here, we affirm.

I. The mortgage in question, on the Lowers' farmland, was executed and filed on June 27, 1978, with the Federal Land Bank as the mortgagee. Via this mortgage the Lowers conveyed to the bank 212 acres of real estate in Iowa County "together with all of the ... *rents,* issues, crops, and profits arising from said lands." (Emphasis added.) The mortgage provided for appointment of a receiver in the event of the Lowers' default.

On August 30, 1985, the bank filed a petition to foreclose the mortgage, and the district court entered a foreclosure decree on January 20, 1986. The decree specified that the bank's mortgage lien was "superior to the liens, claims, rights, titles, and interest of all defendants, and of anyone claiming by, through, or under said defendants."

Despite this decree, on February 4, 1986, the Lowers and Stuart Blythe recorded a farm lease between them for the mortgaged real estate. Blythe paid $12,610 to the Lowers upon the signing of the lease.

On March 4, 1986, a sheriff's sale was held, which resulted in a deficiency judgment of $12,102.56. Two days later, the bank applied to the district court for appointment of a receiver, and one was appointed on March 27.

The Lowers later informed the receiver about the lease but claimed that the rent had, by then, been spent. The bank then requested that the district court either void the lease or order an accounting to the receiver by the Lowers for the rent they had received. The district court ordered an accounting and entered a judgment against the Lowers equal to that of the sheriff's sale ($12,102.56). In addition, the district court ordered Blythe, the lessee, to apply his proceeds from use of the land toward the judgment if the Lowers could not pay it; Blythe has not appealed.

The Lowers, however, did appeal, arguing that the district court erred by ordering an accounting for rents paid before the bank requested appointment of a receiver.[1] They contend the court followed cases that are inapplicable because they revolve around the indexing or recording of a specific mortgage on the rents, which was never done here. In the absence of such a perfected lien, the Lowers assert, other cases say that accounting to a mortgagee is not necessary until the appointment of a receiver is requested.

The bank maintains on appeal that the district court correctly found that a present lien on the rents was created by execution of the original mortgage, because the mort-

---

1. In their application for further review, the Lowers also argue that the court of appeals failed to assess properly the effect of their bankruptcy on the bank's interest in the mortgaged property. This argument, however, was only made orally before the court of appeals; as such, that court did not address it, nor do we. *See* Iowa R.App.P. 14(a)(3). Accordingly, we confine our discussion to the parties' interests outside of the bankruptcy context.

gage conveyed the rents rather than merely pledging them as security in the event of default. According to the bank, the district court based its decision on a factually relevant line of precedent that requires an accounting because of the present lien on the rents.

We initially transferred the case to the court of appeals. It affirmed the district court, as do we for the reasons that follow.

II. The district court and the court of appeals applied the line of authorities that are in accord with *Soehren v. Hein*, 214 Iowa 1060, 243 N.W. 330 (1932). The issue in *Soehren*, as it is here, was when an unindexed lien on rents took effect. *Id.* at 1064, 243 N.W. at 332. There, as here, the "granting clause"—that part of the mortgage which conveys property to the mortgagee—transferred rents along with the land. *See id.* In a later case in that line, we said *Soehren* and *Farmers Trust & Savings Bank v. Miller*, 203 Iowa 1380, 214 N.W. 546 (1927), had held that

the language so used, taken in connection with other provisions of the mortgages relating to the rents ... was sufficient to constitute a valid chattel mortgage. Hence, we find that we have here ... a valid chattel mortgage, covering the rents ... of the mortgaged real estate, pledged as *primary security* for the indebtedness....

... [I]t is now the settled rule in this state that the lien on the rents ... created by the chattel mortgage clause in real estate mortgages ..., is effective from the date of the execution of the mortgage and not from the date of the filing of the petition of foreclosure in which the appointment of a receiver is asked.

*Equitable Life Ins. Co. v. Brown*, 220 Iowa 585, 591–92, 262 N.W. 124, 127–28 (1935) (emphasis added); *accord Bankers Life Co. v. Garlock*, 227 Iowa 1335, 1339–40, 291 N.W. 536, 538–39 (1940).

In the present case the court of appeals noted the factual similarity between the granting clause here and those in the *Brown* line of cases, and concluded that "a valid security interest on the rents and

profits was created upon the execution of the mortgage" by the Lowers and the bank.

The Lowers argue that the district court and court of appeals should instead have followed a line of cases exemplified by *First Trust Joint Stock Land Bank v. Blount*, 223 Iowa 1339, 275 N.W. 64 (1937). The granting clause there did not transfer rents but only pledged them as security in the event of a default. *Id.* at 1340, 275 N.W. at 65. The *Blount* court said that

[i]n numerous decisions of this court we have held that a mortgage such as that involved in this case, which does not convey the rents ... in the granting clause, but merely pledges them in another part of the mortgage, does not constitute a chattel mortgage as to such rents ... and does not create a lien upon the rents ... prior to the filing of a petition for the foreclosure *and a request for the appointment of a receiver*.

*Id.* at 1341, 275 N.W. at 66 (emphasis added); *accord Mutual Benefit Life Ins. Co. v. Netsch*, 233 Iowa 332, 334, 7 N.W.2d 14, 15 (1942); *First Joint Stock Land Bank v. Armstrong*, 220 Iowa 416, 417–18, 262 N.W. 815, 815–16 (1935); *Andrew v. Haag*, 215 Iowa 282, 287, 245 N.W. 436, 439 (1932); *John Hancock Mut. Life Ins. Co. v. Linnan*, 205 Iowa 176, 180, 218 N.W. 46, 47 (1928); *Kooistra v. Gibford*, 201 Iowa 275, 277, 207 N.W. 399, 399–400 (1926); *see also Whiteside v. Morris*, 197 Iowa 211, 213–14, 197 N.W. 56, 57 (1924). *But see Andrew*, 215 Iowa at 283, 245 N.W. at 437 (this rule is applied although "[e]ach mortgage conveys the respective real estate '... together with the *rents* ...'") (emphasis added).

Under the theory of the *Blount* line of cases, execution of the mortgage does not create a lien on the rents because the rents are merely secondary security for the indebtedness. *See Linnan*, 205 Iowa at 180, 218 N.W. at 47. Hence, the mortgagor does not have to account to the mortgagee for the rents until the latter has legally demanded them by requesting the appointment of a receiver. *Id.* at 181, 218 N.W. at 47; *Whiteside*, 197 Iowa at 214, 197 N.W.

at 58. Before the mortgagee acts, the mortgagor may dispose of the rents as desired. *Whiteside,* 197 Iowa at 214, 197 N.W. at 58.

The Lowers contend these cases should have been applied here because the other line of authorities revolves around the outdated chattel mortgage indexing procedure. Under these cases, then, the bank would have no lien on the rents until appointment of a receiver was requested, by which time the Lowers had already disposed of the rents in question.

Similar reasoning was used by the federal bankruptcy court in *In re Winzenburg,* 61 B.R. 141 (N.D.Iowa 1986), a case the Lowers cited. The bankruptcy court held that "[i]n Iowa, a mortgage pledge of rents and profits does not create a lien on the rents ... until a foreclosure action is commenced and appointment of a receiver is requested." *Id.* at 143 (citing *Andrews* and *Linnan* ). The court distinguished the *Brown* line of cases by saying that because the chattel mortgage indexing procedure had been repealed in this state upon adoption of the Uniform Commercial Code, liens on rents could no longer be made effective merely by executing a chattel mortgage. *Id.*

We think the bankruptcy court and the Lowers are incorrect in characterizing the *Brown* line of cases as no longer valid. *See Winzenburg,* 61 B.R. at 143. To begin, Iowa Code section 554.9104(j) (1985) says very plainly that the secured transaction article of the UCC does not apply "to the creation ... of ... [a] lien on real estate, including ... *rents* thereunder." (Emphasis added.) *See also In re Heims,* 65 B.R. 112, 115 (N.D.Iowa 1986) (Iowa UCC does not apply to rents clauses in real estate mortgages). Contrary to the implication of the Lowers' argument, we think the UCC lien perfection procedure, Iowa Code section 554.9401(1)(c), is inapplicable here. The bank was not required to perfect its lien under the UCC.

We need not reach the question here of how a lien on real estate rents should be perfected. We have long held that "[r]ecording is not a part of the execution, and an unrecorded instrument is valid as between the parties to it." *State v. Eagle Petroleum Co.,* 261 Iowa 58, 68, 153 N.W. 2d 115, 121 (1967); *accord In re Estate of Lewis,* 230 Iowa 694, 700, 298 N.W. 842, 845 (1941), *overruled on other grounds, Yetley v. Irons,* 238 Iowa 23, 26, 25 N.W.2d 677, 679 (1947). In the present case, we are deciding the validity of an instrument as between the parties to it, without any third party being involved. Because we think the lien on the rents here is valid, we can see no obstacle to applying the *Brown* line of cases. The Lowers' contention— that changes in lien perfection methods have invalidated that line of cases—has no application when, as here, perfection is not at issue.

The cases exemplified by *Brown* are factually similar to the one before us. The granting clauses conveyed rents along with the land, thus pledging the rents as primary security for the indebtedness. *See Brown,* 220 Iowa at 591, 262 N.W. at 127. We think the granting clause should control. We therefore hold that the bank's lien on rents from the encumbered land was effective from the date of the execution of the mortgage and not from the date on which the appointment of a receiver was requested. *See id.* at 591–92, 262 N.W. at 128.

III. Because the bank had a valid lien on rents when the Lowers received such payment from their lessee, the district court and court of appeals properly ordered the Lowers to account to the bank's receiver for the rents. Accordingly, we affirm.

DECISION OF THE COURT OF APPEALS AND JUDGMENT OF THE DISTRICT COURT AFFIRMED.