In re Minnie Ella PORTER, Debtor.

**FEDERAL LAND BANK, Appellant,**

v.

**Harry R. TERPSTRA, Trustee, Appellee.**

No. C 87–0063.
Bankruptcy No. 85–01180C.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

May 26, 1988.

John M. Titler, Cedar Rapids, Iowa, for Federal Land Bank of Omaha.

Gregory J. Epping, Cedar Rapids, Iowa, for trustee.

William A. Long, Eagle Grove, Iowa, for debtor.

Robert Schell, Des Moines, Iowa, for FDIC.

## ORDER ON APPEAL

HANSEN, District Judge.

This matter is before the court on appellant Federal Land Bank's appeal, filed April 8, 1987, from a decision of the bankruptcy court entered February 27, 1987, holding that rent receipts held by the Trustee are free and clear of the lien claim of the Federal Land Bank. The Trustee resists the appeal and urges this court to affirm the bankruptcy court. Both sides

have filed briefs outlining their arguments, and oral argument has been heard.

The facts are not in dispute, having been stipulated to by the parties and can be briefly summarized as follows:

The debtor mortgaged her Hardin County farm to the Federal Land Bank on June 23, 1980, to secure a $200,000 promissory note she executed in the Land Bank's favor at the same time. The granting clause in that mortgage not only mortgaged and conveyed the real estate but also mortgaged and conveyed "all the right, title and interest (now owned or hereafter acquired) of the Mortgagors in said property ... and the rents, issues, crops and profits arising from said lands." The mortgage was duly recorded on June 25, 1980, in Book 549, pages 415–416, Office of the Hardin County, Iowa Recorder.

On April 4, 1984, debtor entered into an Agricultural Security Agreement with Citizens State Bank of Iowa Falls, Iowa (the FDIC's predecessor in interest). That agreement granted the Citizens State Bank a security interest in debtor's "contract rights." The Citizens State Bank filed a financing statement with the Iowa Secretary of State.

On April 2, 1985, the debtor borrowed $6,700 from the Citizens State Bank and gave her note. On April 23, 1985, she borrowed an additional $35,309.90 from the Citizens State Bank and gave her note. The next day, April 24, 1985, she leased the mortgaged farmland to a tenant for cash rent of $125.00 per acre with the rent to be paid in advance. The lease was recorded on April 29, 1985, with the Hardin County Recorder. The debtor deposited $9,375 of the rent money in a bank account without comingling the funds with any others.

On May 23, 1985, the debtor filed a petition in bankruptcy and turned over the account containing the lease proceeds to the Trustee. When the Trustee deposited those same funds in the trusteeship account on August 22, 1985, accrued interest in the amount of $179.36 had increased the amount to $9,554.36.

At all relevant times, the mortgage to the Federal Land Bank covered the land rented out under the April 24, 1985 lease.

On August 6, 1985, the bankruptcy court lifted the automatic stay to allow Federal Land Bank to institute a mortgage foreclosure action. In March of 1986, the debtor delivered a deed in lieu of foreclosure following discharge of the Land Bank debt. The unsatisfied balance of the Land Bank's indebtedness exceeds the amount at stake in these proceedings. The Land Bank had not filed a foreclosure proceeding or requested the appointment of a receiver prior to the filing of the bankruptcy proceeding.

The bankruptcy court below relied on *In re Winzenburg*, 61 B.R. 141 (Bankr.N.D. Iowa 1986), *aff'd*, No. C86–2062 (N.D.Iowa Dec. 17, 1987) [available on WESTLAW, 1986 WL 21352], and held that because the Federal Land Bank had not instituted its mortgage foreclosure action or requested the appointment of a receiver pre-petition, it had no enforceable lien on the rent proceeds as against the Trustee. Because this court believes *Winzenburg* to be both factually distinguishable and inapposite here, and because this court concludes that a mortgatee's lien on the cash rents received from mortgaged real property under the terms of a mortgage where the rents are conveyed in the granting clause as primary security for the debt is created under Iowa law upon the execution of the mortgage and is perfected upon filing of the mortgage for record in the county recorder's office, the decision of the bankruptcy court must be reversed.

The bankruptcy court's reliance on *Winzenburg* is misplaced in this case. The narrow issue now raised was not contested in *Winzenburg*. In *Winzenburg*, the Federal Land Bank conceded that a mortgage pledge of rents and profits does not create a lien on the rents and profits until a foreclosure action is commenced and appointment of a receiver is requested.

Indeed, Land Bank does not dispute that this is the state of the law in Iowa (Brief p. 2).

*In re Winzenburg*, 61 B.R. at 143.

Even in its brief on appeal in *Winzenburg*, the Land Bank did not attack the point now raised.

It should be noted from the outset that the Land Bank is not seeking the rents and profits in the debtors hands at the date of the filing....

Brief on appeal, p. 4.

The Land Bank is not seeking rents and profits which have been paid to the debtors prior to the time of filing.

*Id.* at 14.

The closest the Land Bank came to raising the present issue was in an oblique tangential parenthetical query:

(Query whether a pledge of rents and profits in the granting clause of a mortgage creates a *primary security* interest in the rents and profits. See *Equitable Life Insurance Co. v. Brown*, 220 Iowa 585, 262 N.W. 124 (1935) and *Soehren v. Hein*, 214 Iowa 1060, 243 N.W. 330 (1932).)

*Id.* at 5–6. Continuing to concede the point as it did before the bankruptcy court, Land Bank said:

Since Iowa is a "lien theory" state, until such a receiver is appointed, the mortgagee has no presently perfected lien on the rents and profits.

*Id.* at 6.

■ The Supreme Court of Iowa recently decided that where the granting clause of a mortgage conveys the rents as a part of the property securing the debt, the granting clause controls and the rents are thereby pledged as primary security for the indebtedness, and the lien of the mortgage upon those rents, as between mortgagor and mortgagee, is effective from the date of the execution of the mortgage and not from the date on which a receiver is requested. *Federal Land Bank v. Lower*, 421 N.W.2d 126 (Iowa 1988). Relying on *Equitable Life Ins. Co. v. Brown*, 220 Iowa 585, 262 N.W. 124 (1935), the Supreme Court of Iowa in *Lower* ordered the mortgagors to account to the mortgagee for cash rents received before the appointment of a receiver under the terms of a mortgage's granting clause which is identical in all respects to the granting clause in the case at bar. *Compare* Exhibit No. 1, p. 5 of the designated record on appeal with the language of the *Lower* mortgage at p. 4 of

the Iowa District Court's trial judge's decision found as Exhibit A to the appellant's brief (docket no. 5). Accordingly, based upon *Lower*, this court concludes that the granting clause of the Federal Land Bank's mortgage in this case conveyed the rents as primary security for the debt and that the Federal Land Bank had a valid present lien upon the $9,375 rent money held by the debtor at the time of the filing of the debtor's petition in bankruptcy.

The Supreme Court of Iowa in *Lower*, *supra*, also concluded that the bankruptcy court in *Winzenburg* was incorrect when it characterized the *Equitable Life Ins. Co. v. Brown*, *supra*, line of cases as being no longer valid. So to the extent that *Winzenburg* is relied upon by the Trustee in this case as an exposition of authoritative Iowa law on the effective date of a mortgage lien on rents, it has been severely undercut by *Lower*, providing an additional basis for reversal in this case.

■ Having determined that the Land Bank had a valid present lien on the rent money at the time the debtor filed for bankruptcy, the court must next determine whether the lien was perfected as against the Trustee. Here, *Lower* is of little help because the Supreme Court of Iowa specifically did not reach the perfection issue.

We need not reach the question here of how a lien on real estate rents should be perfected. ... In the present case, we are deciding the validity of an instrument as between the parties to it, without any third party being involved.... The Lowers' contention—that changes in lien perfection methods have invalidated that line of cases [*Brown* and its progeny]—has no application when, as here, perfection is not at issue.

*Lower*, 421 N.W.2d at 129.

The "changes in lien perfection methods" mentioned by the Supreme Court of Iowa in *Lower* requires some historical background. Before the adoption of the Uniform Commercial Code in Iowa in 1965, real estate mortgages were indexed in the real estate mortgage index in the county recorder's office, and chattel mortgages

were indexed in the chattel mortgage index. Iowa Code § 556.9 (1962). The legislature, in 1921, provided that if a real estate mortgage also created an incumbrance on personal property or provided for a receivership in the event of foreclosure, the person offering the mortgage for recording *"may* have the same recorded at length and also indexed in the chattel mortgage index book...." 1921 Iowa Acts Ch. 246 § 1 (emphasis added). Such a provision was necessary because:

> Prior to the provision of our statute relating to the indexing of real estate mortgages embracing chattel mortgage clauses in the chattel mortgage index, which was enacted by the Thirty–Ninth General Assembly, chapter 246, and is now embraced in Code section 10032 of the 1931 Code of Iowa, the practice on the part of mortgagors in distress of leasing the premises and assigning the lease prior to the commencement of foreclosure proceedings became quite prevalent throughout the state, which called for the enactment of the statutory provision above referred to, and it is now the settled rule in this state that the lien on the rents and profits created by the chattel mortgage clause in real estate mortgages such as we have under consideration in the instant case, when held to be sufficient in form and substance, is effective from the date of the execution of the mortgage and not from the date of the filing of the petition of foreclosure in which the appointment of a receiver is asked, as formerly.

*Brown,* 262 N.W. at 127–28.

The permissive cross-indexing of a real estate mortgage which also encumbered personal property in the chattel mortgage index (thus perfecting both the mortgage's lien on the land and upon the pledged personal property) was made mandatory six years later in 1927, when the 42nd General Assembly amended § 10032 of the 1924 Code to provide that:

> Real estate mortgages which create an incumbrance on personal property or which provide for a receivership *shall,* after being recorded at length, be indexed in the chattel mortgage index book.

1927 Iowa Acts Ch. 212 § 1 (emphasis added) (codified at Iowa Code § 10032 (1927)).

Section 10032, providing for mandatory cross-indexing in the chattel mortgage book, remained the law of this state (as Iowa Code § 556.21 (1962)) until it was repealed as a part of the adoption of the Uniform Commercial Code in 1965. *See* 35B Iowa Code Ann. Appendix: Laws Repealed by the Uniform Commercial Code (West 1967).

When Iowa adopted the UCC, it specifically provided that the UCC's lien creation and perfection requirements (Article 9—Secured Transactions) did not apply to "the creation ... of an interest in or lien on real estate, including a lease or rents thereunder...." Iowa Code § 554.9104(j) (1966). Hence, both parties agree that the UCC's perfection requirements have no application to the Federal Land Bank's lien on the rent proceeds in this case. (Brief of appellant, p. 4; brief of appellee, p. 6.) *Accord Lower,* 421 N.W.2d at 129 ("To begin, Iowa Code section 554.9104(j) (1985) says very plainly that the secured transaction article of the UCC does not apply 'to the creation ... of ... [a] lien on real estate, including ..., rents thereunder.' (Emphasis added.).... The bank was not required to perfect its lien under the UCC.")

While *Lower* establishes that the UCC's perfection requirements are not applicable to a lien on rents from real estate, it leaves unanswered the question as to what perfection method is available to a lender who has taken a security interest in those rents as primary security for the debt. Land Bank argues that the initial recording of the mortgage itself is all that is required to give notice to third parties that the rents are pledged to the lender. If that be the case, then here the Bank's lien would have been perfected pre-petition, and the Trustee would have been on notice of the Bank's security interest in the rent monies. On the other hand, the Trustee says the rule ought to be that the Bank has no perfected lien in rents until a foreclosure action is started and a request for a receiver is

made, relying on *Kooistra v. Gibford*, 201 Iowa 275, 207 N.W. 399 (1926). *Kooistra* is of limited validity here because in the *Kooistra* line of cases the security interest was not created in the granting clause (as in *Lower* and in the case at bar) but was physically located in the default or defeasance clause where the grant itself was not effective until default had occurred. *But see Swan v. Mitchell*, 82 Iowa 307, 311–12, 47 N.W. 1042, 1044 (1891) (where the granting clause of the mortgage clearly conveyed the rents along with the real property, the court said that such a grant "must be construed with the defeasance of the instrument; and, where so construed, the instrument plainly provides that the rents and profits are only pledged in case possession is taken by the mortgagee.").

The Trustee also argues that under the case of *Soehren v. Hein*, 214 Iowa 1060, 243 N.W. 330 (1932), the Bankruptcy Trustee's position is superior because the Trustee is essentially in the position of a bona fide purchaser for value without notice because the Land Bank's lien on the rents was "unindexed." The Trustee's argument would be persuasive if Iowa still had the dual indexing system; under the present Iowa statutes, the separate "indexing" which could have been used to perfect Soehren's chattel mortgage interest in the rents involved no longer exists, so the basic reason for the decision in *Soehren* is not applicable in the case at bar.

When Iowa adopted the UCC in 1965, it abolished the statutory basis for recording the grant of a security interest in rents. The chattel mortgage index ceased to exist. In its place was the UCC's filing and perfection provisions which, as noted, excluded a lien on rents from their scope. If a lien on rents is not within the ambit of the UCC (*Lower*, 421 N.W.2d at 129), then one must look to other provisions of Iowa law to see if and where such a lien may be recorded and notice of its existence imparted. While the fact that the drafters of the UCC considered a lien on rents to be an interest or lien on real estate sufficient to exclude such a lien from the UCC's broad scope of encumbrances on personal property may be some evidence that a grant of a lien on

rents is an instrument affecting real estate, it is not conclusive.

Iowa Code § 558.1 defines instruments affecting real estate as "all instruments ... in any manner relating to real estate...." Iowa Code § 558.41 provides that

> No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided.

Iowa Code § 558.41 (1987).

Is an instrument granting a lien on future rents an "instrument ... in any manner relating to real estate" so that it is entitled on its own strength to be filed in the county recorder's office? Based on the case of *Weyrauch v. Johnson*, 201 Iowa 1197, 208 N.W. 706 (1926), this court concludes that it is.

In *Weyrauch*, a chattel mortgage granted a security interest in future crops to be raised on particularly described farmland. The mortgage was duly filed for record as a chattel mortgage. The mortgagee then sought to record it in the real estate mortgage records as well. The county recorder refused to do so, and the mortgagee brought a mandamus action to compel the recording. The trial court granted the writ compelling the recording of the chattel mortgage in the real estate mortgage records, and the Supreme Court affirmed. In doing so, the Supreme Court determined that such a chattel mortgage on future crops is an instrument "in any manner relating to real estate" because of the possibility that a future growing but not yet mature crop would pass to a future vendee with the real estate. Under then Iowa law, a chattel mortgage on future crops was valid but did not attach until the future crops came into existence. *Accord* Iowa Code § 554.9204(2)(a) (1987). So too as to rents with a mortgage whose granting clause conveyed the right to future rents. *Equitable Life Assurance Soc'y v. Hastings*, 223 Iowa 808, 273 N.W. 908 (1937). The right to receive future rents from real

estate is also something that passes to a vendee with the real estate. Hence, for the same reason that the chattel mortgage on future crops in *Weyrauch, supra,* was entitled to be recorded as an instrument "relating to real estate," so too a present day grant of a security interest in future rents in particularly described real property is entitled to recording under Iowa Code § 558.1 as an instrument "relating to real estate," and when so recorded and filed is valid as against subsequent purchasers. The filing and recording of the Land Bank's mortgage in this case, conveying to it the future rents as primary security, did everything that a separate written assignment of future rents as additional security for the debt, if duly acknowledged and recorded, could have accomplished. Moreover, it did the same thing, i.e., the imparting of notice to the whole world, that recording and indexing of a chattel mortgage in the chattel mortgage index did prior to 1965 under the *Brown* line of cases. Either one would have put the Trustee on notice of a pre-existing grant of a security interest in the rents held by the debtors.

> It is the universal rule of law that the recording of an instrument in the recorder's office is notice to all the world of its contents.

*Bristow v. Lange,* 221 Iowa 904, 912, 266 N.W. 808, 812 (1936).

> When such requirements of the Iowa law for recording have been complied with the record is constructive notice to all the world of the contents of the instrument creating the lien and of the rights of the parties thereto.

*Ginsberg v. Lindel,* 107 F.2d 721, 727 (8th Cir.1939) (citing cases).

Notice is the essence of perfection. Here, where the security interest in rents was not entitled to be filed and perfected as a UCC interest in personal property (because it was for UCC purposes a lien on or interest in real estate), but was entitled to filing in the county recorder's office as an instrument "relating to real estate,"

such filing in the real estate records results in the same type of notice that perfection under the UCC gives to personal property security interests—that is notice to the world of the existence of the lien.

It follows therefore that when the Land Bank recorded its mortgage, which conveyed the rents as primary security for the debt, it perfected its lien on those cash rents involved in this case, and the debtor (and the Trustee thereafter) held those cash rent receipts subject to the Land Bank's preexisting lien.

This decision is limited by and to the particular facts of this case. Because the UCC has very carefully crafted provisions concerning the granting and perfecting of security interests in all other items of personal property (see § 554.9102 for the broad scope of Article 9), including crops (which provisions are not implicated by the holding in this case), this decision is of necessity quite narrow in its reach.

### ORDER:

Accordingly, It Is Ordered:

1. The decision of the bankruptcy court entered on February 27, 1987, is REVERSED.

2. The Federal Land Bank's perfected security interest in the $9,375 of rent receipts held by the debtor at the time of the filing of her petition in bankruptcy is superior to the claim of the Trustee. The Trustee is directed to pay those funds over to the Federal Land Bank.[1]

---

1. The order was later amended so as to strike the final sentence and add the following language: "This cause is remanded to the Bankruptcy Court for the purpose of further administration of the Bankruptcy estate consistent with the foregoing judgment."