Luetta L. SCHAFFNER, Appellee,

v.

Melvin C. EBEL, Larry E. Ebel, Evelyn M. Streif, Shirley A. King, Lavern Ebel, and Wayne Ebel, Defendants,

and

United States of America, Appellant.

No. 89–1102.

Court of Appeals of Iowa.

Oct. 23, 1990.

Paul C. Lillios, Asst. U.S. Atty., for appellant.

John M. Heckel of Holden, Steggall & Heckel, Cedar Rapids, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

The United States appeals an order denying its claim to certain rental proceeds paid by a debtor to a receiver holding the vendors' interest in a partition action. The order authorized the receiver to pay delinquent real estate taxes with the proceeds. We reverse the judgment of the trial court and remand with directions.

In October 1976 Lillie B. Ebel entered into a contract to sell a farm to her grandson, Wayne Ebel. The standard short form contract used by the parties contained the usual forfeiture and foreclosure clauses and required payments of $6,000 each year for nine years and payment of the balance of the $84,000 in the tenth year.

Wayne gave promissory notes and, in April 1978 and February 1982, gave mortgages to the Farmers Home Administration (FmHA or United States). He borrowed approximately $419,340 under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*, and the Emergency Agricultural Credit Adjustment Act of 1978, 7 U.S.C. § 1961. The mortgages state that "in consideration of the loan(s) ... Borrower does hereby convey, mortgage, and assign unto the Government [the farm property at issue (giving a legal description)] ... [s]ubject to a Contract of Sale to Lillie B. Ebel ... together with all rights ... thereunto belonging, the rents, issues, and profits thereof...."

At some time not reflected in the record, Wayne defaulted on his real estate contract with Lillie and on his obligations to FmHA. Apparently in 1988, a bankruptcy court discharged his obligations to FmHA. On dates not clear from the record but apparently in the midst of Wayne's financial problems, Lillie died, and her estate was probated. Plaintiff Luetta L. Schaffner and defendants Melvin C. Ebel, Larry E. Ebel, Evelyn M. Strief, Shirley A. King, and Lavern Ebel, each received an equal share in the vendor's contract interest.

On July 18, 1988, plaintiff Schaffner petitioned the court to partition the property among the defendants and herself, to appoint a receiver who would serve also as a referee, to order the referee to sell the property, and to divide the sale proceeds among Lillie's devisees. The district court entered an order on August 19, 1988, partitioning the property. It also found the United States was a dispensable party, notwithstanding FmHA's mortgages on Wayne's interest. Finally, the district court appointed a receiver/referee. The United States answered the petition on September 2, 1988. It claimed an interest in the property by virtue of the promissory notes and mortgages executed by Wayne. Appellant footnotes the procedural irregularity of entering an order before a named party has answered, but apparently does not raise any serious challenge to it. By agreement, the proceeds were placed in escrow to await a final determination.

On January 6, 1989, the receiver filed a report with the court. He noted Wayne's contract and property tax delinquencies and recommended that a notice of forfeiture be issued. In the meantime, Wayne had rented the farm to another party, and he paid the rental proceeds to the receiver. The receiver asked the court to decide how to dispose of rental proceeds from the property. The district court authorized forfeiture proceedings on February 16, 1989. We note that the taxing authority is not a party to this action, and if it were, its action would be *in rem*. *See* Iowa Code §§ 445.28–.30 (1989); *cf.* Iowa Code §§ 420.231–.232 (1989).

The court held a hearing on May 18, 1989, to determine how to dispose of rental proceeds. Eventually, the referee sought to apply the rental proceeds of approxi-

mately $6,000 to the back taxes on the property. FmHA appeared and filed a motion seeking priority to the rental proceeds based on its mortgage. Wayne's breach not having been cured, the forfeiture became final on June 15, 1989.

In an order filed June 20, 1989, the district court granted the referee's request to apply the rental proceeds to the payment of the delinquent property taxes. The court found that the referee stood in the place of the contract vendor. The court determined that FmHA subordinated its interest in the proceeds in its own mortgage provision making it subject to Lillie's contract of sale. The United States has filed this appeal.

■ Citing Iowa Rule of Civil Procedure 280, appellee Schaffner challenges the United States' right to make a claim for the rental proceeds. She argues that the United States must plead and prove its foreclosure rights. The United States contends, however, that these issues were not preserved, and we agree. We will not consider issues not properly and timely preserved. *Farmers Trust and Savings Bank v. Manning,* 359 N.W.2d 461, 465 (Iowa 1984). Moreover, we find no such requirement in rule 280, which *requires* a court to "adjudge the nature, extent, priority or validity of any lien of any party." *See also Harper v. Coad,* 191 N.W.2d 682, 689 (Iowa 1971) (district court has broad power to adjust rights of all parties in partition).

■ Appellant United States claims that it has priority under 31 United States Code section 3713 and Iowa Code section 680.7. We find reliance on these statutes to be misplaced, and the United States' contentions without merit.

Section 3713 states:

(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

\*    \*    \*    \*    \*    \*

(iii) an act of bankruptcy is committed....

\*    \*    \*    \*    \*    \*

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713 (1989). Section 680.7 requires a receiver to pay the United States first when it is so entitled under federal law. In particular, the United States relies on subsections (a)(1)(A)(iii) and (b).

The United States Supreme Court has found that section 3713, or its predecessor statute, revised statutes section 3466 (title 31, sections 191 and 192), mandates the federal government's priority even over a state tax lien when a receiver is appointed unless the competing lien meets requirements of perfection and a certain level of definiteness. *Illinois ex rel. Gordon v. Campbell,* 329 U.S. 362, 374–76, 67 S.Ct. 340, 347–48, 91 L.Ed. 348 (1946); *State v. Woodroof,* 253 Ala. 620, 46 So.2d 553, 561 (1950); *In re Kirkman Furniture Co.,* 258 N.C. 733, 129 S.E.2d 471, 475 (1963); *Bishop v. Black,* 233 N.C. 333, 64 S.E.2d 167, 170 (1951); *Ernst v. Guarantee Millwork,* 200 Wash. 195, 93 P.2d 404, 408 (1939). The cases we surveyed, however, involved the United States' priority as to a debtor's assets held by a receiver appointed to take possession of a debtor's property. *See Woodroof,* 46 So.2d at 554; *Kirkman Furniture Co.,* 129 S.E.2d at 472; *Bishop,* 64 S.E.2d at 168; *Ernst,* 93 P.2d at 406. Neither case law nor the statute itself would appear to support the United States' bold position that it is entitled to money paid over to a receiver for another creditor (the vendors). In fact, once the property is out of the debtor's hands, or the debtor's representative's hands, the priority ceases to exist because no lien is created by this statute. *United States v. Oklahoma,* 261 U.S. 253, 259–60, 43 S.Ct. 295, 297–98, 67 L.Ed. 638 (1922); *see United States v. Emory,* 314 U.S. 423, 426, 62 S.Ct. 317, 319, 86 L.Ed. 315 (1941); *Bramwell v. United States Fidelity & Guarantee Co.,* 269 U.S. 483, 490, 46 S.Ct. 176, 178, 70 L.Ed. 368 (1926); *Bishop,* 64 S.E.2d at 170. Once the

debtor paid the rent to the vendors' receiver, any priority the United States might have had under section 3713 ended.

The United States argues the district court erred in failing to find that FmHA had a security interest in rental proceeds paid to Wayne Ebel before his contract with Lillie Ebel was forfeited. The United States' main arguments are that the district court failed to interpret the instruments at issue according to their plain meaning and intent and that its reading of the "subject to" language added in the middle of the granting clause was contrary to Iowa case law.

Under *Federal Land Bank v. Lower*, 421 N.W.2d 126 (Iowa 1985), it is clear that FmHA had a valid lien on rents as they accrued as primary security. The lien on rents was created by inclusion of a chattel mortgage in the granting clause in the real estate mortgage. *Id.* at 128 (quoting *Equitable Life Ins. Co. v. Brown*, 220 Iowa 585, 591–92, 262 N.W. 124, 127–28 (1935)); *accord Bankers Life Co. v. Garlock*, 227 Iowa 1335, 1339–40, 291 N.W. 536, 538–39 (1940); *see also Soehren v. Hein*, 214 Iowa 1060, 1064, 243 N.W. 330, 332 (1932); *Farmers Trust & Sav. Bank v. Miller*, 203 Iowa 1380, 1383, 214 N.W. 546, 547 (1927). According to this line of cases, the lien on rents is effective when the mortgage goes into effect, and a mortgagee under such a clause does not have to petition for foreclosure and for appointment of a receiver for the lien to be effective. *Lower*, 421 N.W.2d at 128 (quoting *Brown*, 220 Iowa at 591–92, 262 N.W. at 127–28). As in *Lower*, there is no question before us about whether any lien was properly perfected. *Id.* at 129.

Moreover, in *First Joint Stock Land Bank v. Armstrong*, 220 Iowa 416, 421–23, 262 N.W. 815, 816–17 (1935), the supreme court examined a granting clause substantially similar to that in the mortgage Wayne Ebel gave to FmHA. Both contained granting language followed by a land description, a "subject to" clause, and a grant of a lien on rents as primary security for the obligation (all in one sentence). The supreme court compared the foregoing formulation appearing in a second mortgage to a first mortgage that contained a pledge of rents as security in a clause "remote" from the granting language (after several distinct intervening paragraphs). Utilizing rules of construction and interpretation, the court concluded that the remote pledge had not become operative, and the first mortgagee did not have priority because of the pledge. *Id.* at 423, 262 N.W. at 817–18. The court went on to determine that the "subject to" language in the second mortgage did not subordinate the second mortgagee's claim to rents as argued by the first mortgagee. *Id.* at 422–23, 262 N.W. at 818. It found that the "subject to" language was intended to subordinate the second mortgage to the first mortgage only as to the land, *i.e.*, it was merely notice or recognition, but the natural effect of the clause was to create a separate interest in rents. *Id.* Although *Armstrong* appears in a line of cases rejected by *Lower* for their holding on the issue of when such a lien on rents took effect, *Lower*, 421 N.W.2d at 128, it does not appear that this has affected *Armstrong's* other teachings.

The question that emerges is whether the vendors had some interest in the rent that took priority over the lien Wayne Ebel granted to FmHA. It is clear, and the parties do not dispute, that the vendors are entitled to any rental proceeds due when the rights of the vendee/landlord were cut off by forfeiture of his interest. *Johnson v. Siedel*, 178 Iowa 244, 247, 159 N.W. 677, 678 (1916); *accord Ganzer v. Pfab*, 360 N.W.2d 754, 756 (Iowa 1985) ("The vendor will be entitled to all rent payments that become due after the date of the real estate contract forfeiture."). The rental proceeds, however, came due and were paid sometime before the forfeiture proceedings were begun. Extrapolating *Johnson, Ganzer*, and chapter 656, it seems clear that the vendors could have no interest superior to the vendee/landlord in the rental proceeds until they canceled the contract and forfeited the vendee's interest. *See Ganzer*, 360 N.W.2d at 756; *Johnson*, 178 Iowa at 247, 159 N.W. at 678; Iowa Code §§ 656.2(1)(c), 656.5 (1989). If this is so, the United

States had the only valid security interest in rental proceeds due until the vendors treated the contract as canceled and the vendee's interest as a nullity.

We conclude, therefore, that the United States had a valid lien on the rental proceeds and that the district court was in error in finding otherwise. We reverse the judgment, and we remand the action to the district court with directions to order the referee to pay over $6,000 rental proceeds, together with any interest accrued thereon, to Farmers Home Administration or the United States of America in satisfaction of its lien on those proceeds.

REVERSED AND REMANDED WITH DIRECTIONS.